STEVE WASZEN AND STEVE WASZEN, JR., CO-PARTNERS, t/a STEVE WASZEN & SON, AND ALEX FISCHER, A TAX-PAYER OF THE CITY OF ATLANTIC CITY, NEW JERSEY, PROSECUTORS-APPELLANTS, v. CITY OF ATLANTIC CITY, A MUNICIPAL CORPORATION AND LAWRENCE B. HAINES, RESPONDENTS.

Argued November 29, 1948—Decided January 10, 1949.

*Mr. Joseph B. Perskie* argued the cause for the prosecutors-appellants (*Mr. Isaac C. Ginsburg* on the brief).

*Mr. Chaim H. Sandler* argued the cause for the respondent City of Atlantic City (*Mr. Daniel J. Dowling* on the brief).

*Mr. Stephen A. Damico* argued the cause for the respondent Lawrence B. Haines.

The opinion of the court was delivered by

OLIPHANT, J.   This is an appeal from a judgment of the former Supreme Court dismissing a writ of certiorari allowed to review a resolution and the award of a contract, made pursuant to that resolution, for the removal and disposal of the garbage of the City of Atlantic City, New Jersey, by the Board of Commissioners of that municipality.

The prosecutor-appellants below attacked the specifications in several important particulars but the old Supreme Court generally held that the alleged irregularities in the specifications were not of such a substantial nature as would operate to affect fair and competitive bidding and that in such minor details of complicated specifications the court ordinarily would not interfere with the discretion of the governing body and cited the cases of *Schwitzer v. Board of Education,* 79 *N. J.*

L. 342 *(Sup. Ct.* 1910*)* and *Phifer v. Bayonne,* 105 *N. J. L.* 524
*(Sup. Ct.* 1929*).* With this view we are not entirely in accord
and a careful consideration of the entire record leads us
to a contrary conclusion.

The prosecutor-appellants, the Waszens, were unsuccessful
bidders though they had submitted the low bid for the garbage
removal contract. The other prosecutor-appellant, Fischer,
is alleged to be a citizen and taxpayer of Atlantic City and no
question has been raised with respect to his qualification as
a party to this suit.

Admittedly the Waszens did not conform with certain of
the specifications and the Board found that they were not
responsible bidders within the meaning of the statutory re-
quirements. *R. S.* 40:50–1; 40:66–4.

Since they were the unsuccessful bidders they there-
fore have no standing to challenge the award of the contract
to a rival bidder or to attack allegedly illegal specifications.
*McGovern v. Trenton,* 60 *N. J. L.* 402 *(Sup. Ct.* 1897*); Inter-
national Motor Co. v. Mayor, etc.,* 96 *Id.* 364 *(Sup. Ct.* 1921*);
Farrell, Inc. v. Board of Education of Newark,* 137 *Id.* 408
*(Sup. Ct.* 1948*).* The rationale of such a holding is that one
cannot endeavor to take advantage of a contract to be awarded
under illegal specifications and then, when unsuccessful, seek
to have the contract set aside. But Fischer was a citizen and
taxpayer and as such he may attack the award and also raise
the question of the illegality of the specifications. *Schwitzer
v. Board of Education, supra; McGovern v. Trenton, supra;
West Essex B. & L. Asso. v. Caldwell,* 112 *N. J. L.* 466 *at* 468
*(Sup. Ct.* 1934*); Travis v. Highlands,* 136 *Id.* 199, 201 *(Sup.
Ct.* 1947*).*

Atlantic City admittedly has a serious garbage disposal
problem since the amount of garbage is subject to sharp
fluctuation due to peaks and lows of its floating population.
For some time there has been operated there what is tritely
referred to as the farmer-collector system, whereunder the
holder of the contract makes arrangements with a number of
pig raising farmers to collect the garbage and to whose farms
it is brought and disposed of. The contract holder distributes

the collection routes to certain of these farmers, supervises the collection and disposition of the garbage and deals with all complaints with respect thereto. On his part he is required to have certain resources, equipment and personnel to take up any slack in the collection and disposal of the garbage. While it is true the city has had a bad experience with its garbage problem, nevertheless difficult situations of and by themselves do not always form the legal basis for an exception to controlling legal principles.

The city originally advertised for bids to be received for garbage collection disposal on a one year basis. Both the Waszens and Lawrence B. Haines, to whom the challenged contract has been awarded, submitted bids for the contract, that of the Waszens being the low bid. A hearing was held to determine the lowest responsible bidder and all bids were rejected. No reason was assigned by the city for this action but the record indicates that all parties agreed that a contract on a three year basis would be more advantageous to all concerned, including the city. It is important to note, in view of what will now be said, that a full hearing was held on the bids submitted under the original specifications.

When proposals were called for and advertised a short time later on a three year basis it appeared for the first time that several changes had been made in the specifications. (1) The number of trucks required to be owned outright by the bidding contractor were increased from six to twelve; (2) the bidder was required to be a freeholder in Atlantic County; (3) the farmer-collectors were required to have had experience in the collection of garbage in Atlantic City within the last five years; (4) the bidder was required to show a satisfactory past performance of a garbage contract, preferably a municipal contract; (5) the bidder was required to produce proof of the proper licensing of the trucks owned by him under the law of this state and evidence that these trucks were insured for public liability and property damage in designated amounts; and (6) the contractor was required to submit proof with the bid that he had an office in Atlantic County, when heretofore

he was only required to establish such an office after the contract was awarded.

Haines' successful bid was in the amount of $45,000., that of the Waszens was $31,200. The Waszens deliberately failed to comply with one of the specifications, No. 30, and did not and could not meet the requirements of several others, yet a hearing was held and the contract awarded to Haines who had held the previous contract for city garbage collection which expired December 27, 1946, and had thereafter been doing the work as a "temporary employee" under an arrangement which apparently had the approval of the Civil Service Commission. Admittedly he did the best job in the history of the City's garbage collection. It was evidently anxious to retain his services. To attain that objective it exceeded legal bounds.

Before discussing the various specifications, for the purposes of clarity it may help to state that garbage generally is defined under the contract to mean "all refuse and waste of animal, fish and vegetable matter which has been used for food and all such refuse animal and vegetable matter which was intended to be so used" and it was not to be mixed with oyster and clam shells, waste paper, cans or other similar refuse. In short, the contract is so designed that the garbage is edible and usable by and in the raising of swine with the exception of fish waste which will be mentioned hereafter and which is dealt with in a particular specification.

The major attack of the appellants is directed to specification No. 30. This required that there be attached to the bid a list of at least twenty-five Atlantic County farmers, signed by each one, together with an affidavit that each owned a farm of ten acres on which there is not less than 50 nor more than 1000 swine, and the contractor agrees to distribute the garbage to them as provided in the specification and to such others as the Mayor from time to time in writing approves. There is nothing in this specification which specifically calls for such farmers to collect the garbage but such apparently is the contemplated scheme.

The record indicates there are at the most about 35 or 37 farmers who could meet the requirements as to ownership and operation of the type of farms specified. The specification in requiring that 25 farmers must be signed up and listed with the bid removed the actual control of the award of the contract from the municipal authorities and either placed it in the control of a person or persons who could control or dominate the large percentage of the qualified farmers or permitted the 25 farmers to dictate who the successful bidder should be.

This is clearly demonstrated by the fact that prior to the time for the reception of bids on the second letting Haines had signed up 28 farmers and the testimony shows his superintendent and manager told each of them "if they signed up for anyone else, they would not get any garbage from you." In each farmer affidavit attached to Haines' bid there was this significant language "this affidavit is taken to conform with a paragraph of a specification for the collection of garbage in Atlantic City for the ensuing year and I have not signed any affidavit similar to the above for the purpose of permitting any other person than Lawrence B. Haines to bid on the said contract." These actions by Haines and the farmers precluded anyone but Haines from meeting the requirements of specification No. 30.

In considering the particular provision of specification No. 30 limiting the list of farmers to those operating farms in Atlantic County it should be pointed out that the reason stated in support thereof is that "the transportation problem would not be as expensive, the haul would not be as long and the equipment would not break down as rapidly" does not impress us because we judicially note that the western and southwestern sections of Atlantic County are much farther removed from Atlantic City than the northeastern part of Cape May County and the southeastern part of Burlington County. We are also not impressed by the other stated reason for this limitation, that one of the purposes of the contract is to enhance the national economy and particularly the food supply in Atlantic County, which is not a municipal function, or that the

Atlantic County farmer will display a greater interest in the business of Atlantic City than those from adjoining counties.

Specification No. 30 further contains a provision with regard to the disposal of fish waste. It requires *inter alia* that "The entrails and waste from fish markets and fish filleting plants shall be *rendered or otherwise converted by the contractor within the limitation of Atlantic County and in a manner specified in the bid."* By a provision in specification No. 16 the method of disposal must meet with the approval of the Board of Commissioners and in specification No. 20 it is stated that the garbage shall be disposed of in accordance with the law and in a manner not calculated to create a public or private nuisance.

Under these provisions the bidder, in addition to rendering can use any one of several methods of converting, subject only to the unrestricted discretion of the Board of Commissioners. This discretion apparently is not limited to the law defining a public or private nuisance. It is clear that such a specification should be confined to a definite standard or standards upon which bidders can rely and base their bids. If each bidder, subject to the unlimited discretion of the Board of Commissioners, can choose a method other than rendering for the conversion of garbage then there is no standard upon which competitive bids could be made. *Tice v. Long Branch* 98 *N. J. L.* 214 *(E. & A.* 1922); *Rankin v. Board of Education of Egg Harbor Twp.,* 135 *N. J. L.* 299 *(E. & A.* 1947).

Specification No. 31 requires that the contractor must be in control of no less than 20 described trucks, at least 12 of which must be personally owned by the bidder. The testimony is that in the past the garbage has been collected and disposed of during the seasons of peak loads by 28 farmers and they and the contractor used between them 29 farmer trucks and 4 or 5 trucks of the contractor.

The 20 trucks called for by the specification obviously will not do the work of 33 or 34 trucks which were used in the past during the season of peak loads. The record shows the listed farmers were to use their trucks and this is also clear

from the provisions in specification No. 30 which require that the said farmers have had experience in the collection of garbage in the City of Atlantic City within the period of the past five years and also have had good records in the performance of such collection.

If the farmer was not to collect the garbage with his truck and dispose of it then this latter provision serves no purpose whatsoever and is meaningless. If such is a possible reading of the specification then the 25 farmer trucks plus the 20 trucks controlled by the contractor would make a high total of 45 available collection trucks. But if only the 12 trucks owned personally by the contractor were to be used then this would make a total of 37 available collection trucks. If either total is used both are in excess of the 33 or 34 trucks needed in the past for the collection and disposal of the peak load and considerably in excess of the number needed for normal operations, and there appears to be no reasonable relation or explanation between what was actually demonstrated by the proofs to be required to do the work under all conditions and the number of available trucks required by the specifications.

It may very well be that the cooperation of 25 farmers is reasonably necessary to secure adequate and prompt disposal of the garbage, but the specification does not stop there. Instead it permits the collecting to be done with any possible combination of farmer trucks and trucks owned and controlled by the contractor.

It should be noted here that the figure of 33 or 34 trucks is the basic agreed figure in this controversy, yet nowhere do these numbers appear in the specifications in any required combination or arrangement under the specifications and this omission of and by itself indicates a lack of reasonable and material relation between the figures and ratios set out in the specifications and the purposes of the work to be accomplished. We have no hesitancy in saying that this specification is so indefinite as to be illegal.

A specification of this type under the statute must be clear, precise and definite on all matters that are material to the proposal and must set up a common standard for competi-

tion. *Tice v. Long Branch,* supra. There must be a reasonable relation between the purpose of the specification and the character of the work to be performed under the contract. We have difficulty in apprehending such a relation. A mere statement of the above alternatives or possibilities demonstrates that specifications Nos. 30 and 31 lack the necessary clearness, preciseness and definiteness required under the statute and the decided cases.

It may perhaps be a singular coincidence that the successful bidder was the only one who, at the time the bids were advertised for, had a rendering plant and it likewise may be singularly coincidental that several of the qualifications and provisions about to be mentioned were possessed by the successful bidder and the prior holder and present supervisor of garbage disposal in Atlantic City.

The provision in specification No. 42 that the "bidder must be a freeholder of Atlantic County" when compared with the purposes of other specifications to secure the best qualified municipal garbage contractor to undertake the work demonstrates the lack of relation between such a provision and the object to be accomplished. No adequate reason is urged to support such a proposition and we hold there is no such relation. A resident, though not a freeholder, might be a more responsible and efficient garbage collector. It should be noted that Haines was a freeholder of Atlantic County and the Waszens were not.

The requirement of specification No. 41 that the contractor shall maintain an office on the outskirts of Atlantic City standing *of and by itself,* seems reasonable if the requirement was that he should maintain the office after the award, but the record shows that the bidder, Haines, in the past had had permission and the right to use rent free a building on the city dumps, a right which was not at the time of the submission of bids available to the other bidders. In view of the fact that the bids were being accepted for a three year period, the cost of a three year lease for the rent of an office could result in a material variation of the bids. In this way an undue advantage was given to Haines. *Riddle v. Atlantic City,* 89

*N. J. L.* 122, 127 *(Sup. Ct.* 1916); *Armstrong v. Trenton,* 137 *N. J. L.* 332 *(Sup. Ct.* 1948).

These several coincidental advantages arising out of the requirements of the specifications and qualifications, peculiarly then present in one of the bidders, in the aggregate may be presumed to give such person a competitive advantage and they were certainly used in determining the responsibility of the bidders. The responsibility of the bidders must be found generally in the financial, engineering, business experience and competency of the bidder and his organization and it is not to be implied solely by comparison with the provisions of the specifications under which the bids were invited.

While some of the irregularities in the specifications are slight and inconsequential others are of a substantial nature and a review of the entire testimony leads us to the inescapable conclusion that they are not sufficiently clear, precise and definite on all matters that are material to the proposal. This particularly is true with the provisions relating to the required list of 25 farmers and the details as to the available trucks for collection purposes.

We conclude that the indicated irregularities in the specifications as drawn were of such a substantial character that they operated to affect fair and competitive bidding. *Phifer v. Bayonne,* supra.

The philosophy and purposes of the statutes respecting municipal contracts have been enunciated in our decisions upon numerous occasions. The law is well settled that economy must be secured and fraud, favoritism and extravagance prevented to the end that all bidders will be on the same basis in matters material to the proposed municipal action. As said in *Tice v. Long Branch, supra,* and iterated in *Rankin v. Board of Education of Egg Harbor Twp.,* supra, "The rule is one which is rooted deep in sound principles of public policy by general application. It should be rigidly adhered to by the courts and not frittered away by a careless or indifferent application to specifications that are not clear, precise and definite on all matters that are material to the proposals, to which bidders are invited to compete. The neces-

sity of having a common standard and the importance of definite and precise specifications upon which to found corporate action are too apparent to require argument". The specifications in the instant case do not meet that standard.

The judgment of the Supreme Court is reversed and the resolution awarding the contract to respondent Haines and the contract pursuant to that resolution are set aside.

*For reversal:* Chief Justice VANDERBILT and Justices CASE, HEHER, OLIPHANT, WACHENFELD, BURLING, and ACKERSON—7.

*For affirmance:* None.