37 N.J. Super. 159 (1955)
117 A.2d 140
WILLIAM A. CAREY & CO., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
BOROUGH OF FAIR LAWN, BERGEN COUNTY, NEW JERSEY, ET AL., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 12, 1955.
Decided September 29, 1955.
*161 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Samuel A. Larner argued the cause for plaintiff-appellant (Messrs. Budd, Larner & Kent, attorneys).
*162 Mr. John J. Breslin, Jr., argued the cause for defendants-respondents (Mr. Joseph G. Sproviere and Messrs. Breslin and Breslin, attorneys).
The opinion of the court was delivered by CONFORD, J.A.D.
On April 13, 1954 the plaintiff was one of four bidders in response to public advertisements for proposals for garbage collection in the Borough of Fair Lawn to commence May 18, 1954. The contract was awarded to the defendant Mastrangelo, one of the other bidders, and this proceeding in lieu of prerogative writ seeks to set that action aside as illegal and demands judgment declaring that plaintiff was the lowest responsible bidder and legally entitled to the award. The Law Division held that since the plaintiff's status to maintain the action was solely as an unsuccessful bidder and not as a taxpayer or citizen, it was precluded from attacking the municipal proceedings because its own proposals failed to conform with the specifications of the borough in several particular respects.
The award to Mastrangelo, for a three-year period, was made by a resolution finding that his was the low bid, "considering the projected growth of Fair Lawn." The plaintiff's bid for three years on a fixed basis was some $17,000 less than that of Mastrangelo. But the latter's additional proposals on a unit basis for servicing dwellings to be constructed, as compared with Carey's projected against estimates of future construction for three years made by the borough manager after the receipt of the bids, operated to make the Mastrangelo total bid less than that of the Carey firm for the contract period by some $1300 ($281,868 as against $283,238). The complaint charged that this result was the product of manipulation of estimates in bad faith for the purpose of granting the contract "to a favored bidder." The trial court found it unnecessary to determine the merits of this contention, its conclusion against the plaintiff being premised on the assumption that it was the lowest bidder. Defendants make the same concession for purposes of their argument before us and *163 our discussion of the issues consequently assumes that Carey's bid was lowest.
Municipal contracts with private persons or agencies for collection, removal and disposal of garbage and refuse are subject to regulation by N.J.S.A. 40:66-4 and R.S. 40:50-1 et seq. The first cited section provides that before making such a contract "the governing body shall first adopt specifications for the doing of the work in a sanitary and inoffensive manner" and that advertisement for bids therefor and the award thereof shall be made in the manner provided in the other cited statute. It is further required that the contract include "and in all respects conform to the specifications adopted for the doing of the work." R.S. 40:50-4 provides that public advertisements for bids shall designate the time and place of the meeting at which the bids shall be received; that the bids shall be opened and their contents announced publicly in the presence of bidders; and that no bid shall be received either prior or subsequent to the hour designated in the advertisement. R.S. 40:50-5 provides that the public body charged with the making of the contract may require of any person proposing to bid thereon a "statement showing his financial ability and experience in performing public work, before furnishing him with the plans and specifications therefor" and may refuse to furnish the plans and specifications if not satisfied as to the sufficiency of the statement. The section authorizes adoption of "a standard form of statement or questionnaire for bidders on public work."
The statutory provisions recited evince a legislative intent that by adequate public notice and strict equality of treatment of bidders the taxpaying public may be assured the benefit of competitive bidding on public work and of the award of contracts to the lowest responsible bidder free from manipulation and favoritism, so far as reasonably practicable; cf. Scatuorchio v. Jersey City Incinerator Authority, 14 N.J. 72, 88 (1953); Tufano v. Borough of Cliffside Park, 110 N.J.L. 370, 373 (Sup. Ct. 1933). The important objective of responsibility and competency of bidders is subserved in part by the provision for "pre-qualification" of bidders through *164 the questionnaire. See Gunne v. Borough of Glen Ridge, 11 N.J. Misc. 3, 4 (Sup. Ct. 1932).
The defendant municipality required from bidders for the presently disputed contract answers to a questionnaire which not only called for answers to questions, but contained statements of requirements for performance of the contract which appear to have been intended as supplemental specifications, since the specifications state that the questionnaire "is made a part of the specifications as if the same were fully set forth herein." Instead of invoking the statutory privilege of withholding distribution of specifications to bidders until after submission and approval of completed questionnaires, the municipality required that the questionnaire be completed and submitted together with the bid. Plaintiff has taken no exception to this procedure. Defendants assert that plaintiff was in substantial default of the specifications in three particulars: type of trucks, place for dumping or disposal, and governmental permits for dumping. We proceed to consider these items:
1. Type of trucks. The specifications recite that "the bodies of all vehicles to be used must be * * * Packer type automatic closed body * * *." The questionnaire, in paragraph 1, "Equipment," states: "Describe as follows the trucks mounted with all metal automatic packer type * * * now owned by you and which you propose to use in the performance of this contract. A minimum of seven such type trucks should be listed as: Five for regular daily service and two for emergency purposes." The plaintiff in response listed five packer-type trucks and four not of that type, two of them being closed Heil bodies. Plaintiff asserts this discrepancy did not constitute a failure to qualify for the reasons: (a) R.S. 40:50-5 does not constitute the questionnaire permitted thereby a part of the specifications; (b) there was no requirement that any specific number of trucks must be owned as of the time of submission of the bids, and (c) the equipment requirement was intended to be applicable as of the time of commencement of the work and had plaintiff been accorded a hearing by the authorities it *165 could have established ability to procure seven packer-type trucks or equivalent equipment by that time.
We regard none of these positions as well taken. While the statute designs the questionnaire as a means of preliminary investigation of the bidder's responsibility and capacity, we discern no intent to prohibit its use, as here and frequently in this area of municipal administration, as a convenient means of supplementing the formal specifications, so long as the intent to do so is made clear to the bidder. We have already noted that the specifications expressly state the questionnaire is to be considered as part of the specifications. Moreover, since the specifications proper did not specify the number of trucks required and that subject was plainly one of the most material aspects of the municipality's requirements as well as of the bidder's capacity to perform, the plaintiff could have been under no reasonable misapprehension that the reference in the questionnaire to the possession of seven packer-type trucks by the bidder was a positive requirement. As to the time for compliance, the request in question 1 for the listing of trucks "now owned by you," of the required type and number, plainly operated to require that plaintiff be in compliance at the time of submission of the bid, not, as contended by it on this appeal, when performance of the contract was to begin. As stated in Tufano v. Cliffside Park, supra (110 N.J.L., at page 373),
"the municipal authorities should not be permitted to waive any substantial variance between the conditions under which bids are invited and the proposals submitted. If one bidder is relieved from conforming to the conditions which imposes some duty upon him, or lays the ground for holding him to a strict performance of his contract, that bidder is not contracting in fair competition with those bidders who propose to be bound by all the conditions."
The lowest bidder, within the contemplation of the statute, is the one whose bid is not only the lowest for the work to be done but also conforms to the requirements of the notice to bidders (id.); Albanese v. Machetto, 7 N.J. Super. 188 (App. Div. 1950).
*166 Nor can the departure from specifications in the present instance be regarded as not substantial. The proof is that packer-type trucks contain equipment for compaction of the contents and consequent reduction of bulk and increase of load carrying capacity. It was the borough's responsibility to determine how many such vehicles the bidder should have available. The specification was not arbitrary. Its determination was committed to the discretion and sound judgment of the municipal authorities. Travis v. Borough of Highlands, 136 N.J.L. 199, 200 (Sup. Ct. 1947). Moreover, plaintiff expressly concedes that not being a taxpayer, it is precluded from challenging the specifications, under Waszen v. City of Atlantic City, 1 N.J. 272 (1949). It is an appropriate object of the questionnaire and specifications that the bid furnish assurance of the possession by the bidder at the time of submission of the bid of the physical as well as financial resources for performance of the contract, particularly where it is so closely related to the public health and welfare as in the case of garbage collection. See Gunne v. Glen Ridge, supra (11 N.J. Misc., at page 4). The municipality is not, as acceptance of plaintiff's position would mean, reduced to reliance upon the bidder's apparent capacity at the time of bid, financial or otherwise, to achieve full readiness to perform by the time performance of the contract is to begin. In order to minimize the risk of default by the successful bidder, the governing body may insist upon satisfaction by bidders contemporaneously with the submission of bids of such criteria of capacity for responsible performance as reasonably seem necessary to it. This conclusion is a logical inference from the statutory provision for pre-qualification of bidders and would in any case constitute a power fairly to be implied from the necessary function of determining the responsibility of bidders. Constitution of 1947, Art. IV, § 7, par. 11. We cannot say that the presently contested municipal requirement for the ownership by bidders at the time of the bid, one month before performance of the contract was to begin, of seven packer-type trucks for use on this job was not fairly relevant to responsibility to perform. See *167 Albanese v. Machetto, supra (7 N.J. Super., at page 190). Plaintiff was in default as to trucks.
2. As to a place for dumping. The specifications provide that "the bidder either must own the place of disposal or have a contract or lease to cover the use of the same for the entire period of this contract. The bidder must submit with his bid, legal proof of the ownership of the place of disposal or of the contract or lease covering the same." In the event the contract is awarded to the bidder he is required to assign to the borough by legally recordable instrument the right to use the place of disposal for the full term of the contract, to be exercised in the event of subsequent non-performance by the contractor. The questionnaire asked whether the bidder held a lease on the proposed dump-site and requested the dates of the term and the name of the lessor. The plaintiff named William A. Keegan as the lessor and designated April 13, 1954 to April 13, 1959 as the term. It submitted with its bid a letter from a Keegan corporation dated April 12, 1954, addressed "to whom it may concern," reciting that "permission has been granted by us to William A. Carey Company * * * to dump garbage etc. on our property located in Kearny, New Jersey, from May 18th, 1954 to May 17th, 1959." The letter went on to indicate that the writer owned 20 acres of land "for dumping" and had a lease from the Town of Kearny for 396 acres and that "we have all rights from the Town of Kearny and its Board of Health." It seems supererogatory to detail the respects in which this paper and its submission fell short of the requirements of the specifications. It was not a lease at all, but, at best, a permissive license. It recited no consideration and there was nothing about it to assure the Fair Lawn authorities that it was legally irrevocable for the duration of the contract or of such a nature as to be assignable to the borough, as required. An agreement between the Town of Kearny and Keegan, introduced in evidence at the hearing in the Law Division, executed June 14, 1949 and to run for a ten-year term, granted Keegan the right to enter upon lands of the town for the purpose of depositing garbage and refuse and to permit others *168 to do so, and it imposed upon him certain obligations concerning the maintenance of the grounds, including the providing of equipment to level and compact all refuse deposited, covering it with 12 inches of earth or cinders as required by the town engineer, and in other respects. The agreement was rendered voidable at the instance of the town upon 60-days' notice in the event of default of conditions by Keegan and terminable forthwith by the town as to any portion of the lands which might be sold by it, it being recited that the lands were then listed for sale by the town.
We think it was correctly held by the trial court that plaintiff did not have a contract or lease for the use of the lands in question "for the entire period of" the contract, of a nature within the contemplation of the specifications, and that it did not submit with its bid "legal" or indeed any proof of either a contract or lease of the requisite import. Plaintiff was in default of this specification of the contract. This, too, went directly to the bidder's responsibility and capacity to perform. See Tufano v. Cliffside Park, supra (110 N.J.L., at page 372). Our conclusions with respect to plaintiff's deficiencies in the matters of equipment and dump-site make it unnecessary to consider the question as to its compliance with the specifications in respect to dump permits, an issue resolved against plaintiff by the trial court. There is at least serious doubt as to its compliance on that score.
Plaintiff undertook at the hearing to prove that Mastrangelo's bid was not in compliance with the specifications. It argues that the refusal of the trial court to allow its development of such evidence was error, as it would have substantiated the contention that the disqualification of plaintiff was not in good faith for the reasons assigned but in order improperly to favor Mastrangelo. To this there are several answers. Of most direct significance is the consideration that plaintiff's action must stand or fall on its own entitlement to the contract, it not being a taxpayer or citizen vested with status as such to institute a plenary legal challenge of the municipal action. Waszen v. City of Atlantic *169 City, supra; Solomon v. City of Newark, 137 N.J.L. 247, 249 (Sup. Ct. 1948); Travis v. Borough of Highlands, supra (136 N.J.L., at page 201); Tufano v. Cliffside Park, supra (110 N.J.L., at pages 371, 372); Albanese v. Machetto, 5 N.J. Super. 605, 607 (Law Div. 1949), affirmed in Albanese v. Machetto, supra (7 N.J. Super. 188). The argument of plaintiff to the effect that these authorities go no further than to preclude an attack by an unsuccessful bidder on the specifications for the contract does not withstand scrutiny of the cases or consideration of their rationale. As was stated in International Motor Co. v. City of Plainfield, 96 N.J.L. 364, 365 (Sup. Ct. 1921), the standing in court of a low bidder denied the award "rests upon its right to have its bid accepted," not upon alleged derelictions of the municipal authorities in respect to other aspects of the transaction, and failure on its own part to comply with specifications is fatal to its cause, id. Any illegality in the award to Mastrangelo not reachable by plaintiff remained, of course, the appropriate subject of an action by any taxpayer. Albanese v. Machetto, supra; Haines v. Burlington County Bridge Commission, 1 N.J. Super. 163, 171 (App. Div. 1949).
Moreover, whether or not the rejection of plaintiff's bid was bona fide or motivated in any degree by favoritism for another bidder, its shortcomings in meeting the specifications were so patent that the authorities would have had no choice but to reject it, Tufano v. Cliffside Park, supra, whatever their motivations. Finally, the pretrial order in this matter fails to list the bona fides of the borough authorities as an issue, and, no request for an amendment having been made, notwithstanding that the trial judge adverted to his limitations under the order in that respect at the trial, that question is out of the case. Schlossberg v. Jersey City Sewerage Authority, 15 N.J. 360, 370 (1954).
It remains to consider the contention that the proceedings before the governing body were defective because of the alleged refusal of the authorities to accord plaintiff a "hearing" before acting on the bids so that it might establish that it could comply with the specifications. There was *170 evidence in the Law Division, found credible by the trial judge, indicating that the city manager of the municipality had two conferences with Mr. Carey of the plaintiff corporation between the dates of submission of bids and award of the contract, and pointed out to him the deficiencies with respect to the trucks and as to dumping permits; and that at these meetings Mr. Carey's position was that the trucks listed on his proposal had sufficient capacity to serve the needs of the borough. But it is not necessary to determine whether these interviews constituted a hearing on qualifications of the formality plaintiff insists was its right. We think that in the circumstances here presented there was no occasion for that kind of a hearing. From what has been said it is clear that plaintiff's showing as to qualifications was substantially defective, on the face of the answer to the questionnaire and the papers accompanying the bid, in respect to at least two items of the specifications. The borough council was therefore absolutely precluded from considering the Carey bid. A formal hearing would have served no purpose. Indeed, the only purpose now suggested by plaintiff for a hearing is to have permitted it to establish that it could comply with the borough's requirements by the time performance of the contract was to commence. But we have already seen that that issue was legally irrelevant.
The cases upon which plaintiff relies in the present connection are inapposite. Sellitto v. Cedar Grove, 132 N.J.L. 29 (Sup. Ct. 1944); Id., 133 N.J.L. 41 (Sup. Ct. 1945); Paterson Contracting Co. v. City of Hackensack, 99 N.J.L. 260 (E. & A. 1923); Faist v. City of Hoboken, 72 N.J.L. 361 (Sup. Ct. 1905); Kelly v. Board of Freeholders of Essex, 90 N.J.L. 411 (Sup. Ct. 1917); Ianniello v. Town of Harrison, 4 N.J. Misc. 111 (Sup. Ct. 1926). In these cases it was held or stated that the proposal of the lowest bidder may not be by-passed for purported general lack of responsibility without affording the bidder a hearing on the question, since his low bid prima facie entitles him to the award. In that posture a hearing is plainly indicated, as much in the interest of the taxpaying public as in that of the rejected bidder. *171 But no case is cited or discoverable where, as here, there was a rejection of a bid for a patent failure of the bidder to comply with a specific, objective requirement of the contract specifications, manifested on the face of the proposal, in which it was held or even contended that the governing body was required to go through the motions of a hearing. In such a situation the prima facie right of the bidder has been affirmatively refuted on the record before the municipal body. Plaintiff was not entitled to a formal hearing in the circumstances presented.
As we have concluded that the trial court correctly found plaintiff not to have complied with the specifications the judgment in favor of the defendants must be
Affirmed.