85 N.J. Super. 4 (1964)
203 A.2d 410
ALBERT F. RUEHL CO., A NEW JERSEY CORPORATION, PLAINTIFF,
v.
THE BOARD OF TRUSTEES OF SCHOOLS FOR INDUSTRIAL EDUCATION (ADMINISTERING NEWARK COLLEGE OF ENGINEERING), NEWARK, NEW JERSEY, (OR, IN THE ALTERNATIVE, NEWARK COLLEGE OF ENGINEERING), AND OLENIK PLUMBING AND HEATING CO., A NEW JERSEY CORPORATION, DEFENDANTS. MABEL BLUMENSCHINE, PLAINTIFF,
v.
THE BOARD OF TRUSTEES OF SCHOOLS FOR INDUSTRIAL EDUCATION (ADMINISTERING NEWARK COLLEGE OF ENGINEERING), A BODY CORPORATE, AND OLENIK PLUMBING AND HEATING CO., A NEW JERSEY CORPORATION, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided August 27, 1964.
*7 Mr. Leslie S. Kohn for plaintiffs.
Messrs. Pitney, Hardin & Kipp for defendant The Board of Trustees of Schools For Industrial Education (administering Newark College of Engineering).
Messrs. Winetsky & Brody for defendant Olenik Plumbing and Heating Co.
LABRECQUE, J.S.C.
In these consolidated cases plaintiffs challenge the validity of the action of defendant board of trustees in awarding to defendant Olenik Plumbing and Heating Co. the contract for certain plumbing work on four new buildings to be constructed by the Newark College of Engineering. Plaintiff Albert F. Ruehl Co. was an unsuccessful bidder on the job. Plaintiff Mabel Blumenschine is a resident, property owner and taxpayer of the City of Newark.
Newark College of Engineering is a school for industrial education authorized under R.S. 18:15-17 et seq. It is administered by defendant board of trustees, who constitute a body corporate under the provisions of R.S. 18:15-22. The provisions of N.J.S.A. 18:11-9.1 et seq., apply to it.
On March 4, 1964 defendant board of trustees advertised for bids for the plumbing work on the four new buildings in *8 question, to be constructed on certain lands now under redevelopment. The bids were to be received up to 2 P.M. on April 22, 1964. The advertisement provided, among other things that:
"Each contractor, before being able to submit a bid, must have been qualified for the type and amount of work involved by the New Jersey State Department of Education."
In the advertisement the owner reserved the unrestricted right to reject any and all bids.
The instructions to bidders contained the following:
"NOTE is here made to the requirement that each Bidder shall attach to his proposal a certified financial statement. See detailed requirement in `Form of Bid.'"
Also:
"RIGHT TO ACCEPT OR REJECT PROPOSALS:
The Owner may consider informal any bid or bids not prepared and submitted in accordance with the provisions hereof.
The Owner reserves the unrestricted right to reject any or all bids; to waive any informalities or irregularities in the bids received; and to accept any bid which is deemed most favorable. The Owner also reserves the right to reject any bid, if, in his opinion, the Bidder is not considered financially or technically able to carry out the Contract as intended, or for any other reason which, in the Owner's judgment is not for the best interests of the Newark College of Engineering. See `Competency of Bidders.'"
The form of bid contained the following:
"Special Note: Each contractor is hereby required to attach to his bid, a balance sheet or statement of financial condition as of December 31st of the year preceding the date of this bid. In addition thereto, it is required that such balance sheet or statement of financial condition be certified, without qualification by an independent qualified accountant or auditor."
On April 14, 1964 the time to receive bids was extended to May 1, 1964. On that day plaintiff Ruehl submitted the low bid of $381,000 for the plumbing work and defendant Olenik *9 submitted the next lowest bid of $400,890. In its written bid plaintiff Ruehl, immediately after the "special note" referred to above, had inserted the following handwritten note:
"If we are the successful bidders, the necessary financial statement will be furnished."
On May 4, 1964 defendant board received a letter from plaintiff Ruehl dated May 1, 1964 containing an uncertified financial statement as of December 31, 1963, together with a letter indicating that a line of credit in the amount of $73,000 had been placed at Ruehl's disposal by Albert F. and Gertrude Ruehl. At the time of making its bid the total amount of uncompleted work on other contracts on which Ruehl was engaged, as evidenced by the certificate under oath filed with the board, was $200,000.
On May 6 the defendant board was notified by plaintiff Ruehl, by letter, that its alternate bid No. 6, which had read that $17,482 should be deducted, should have read that $9,968 should be deducted, thus increasing the alternate price on this item by $7,514.
On January 1, 1963, chapter 105 of the Laws of 1962 went into effect. N.J.S.A. 18:11-9.1 et seq. By its provisions all persons proposing to bid on contracts for boards of education were required to be classified by the State Board of Education as to the character and amount of public work on which such persons would be qualified to submit bids, and boards of education were restricted to accepting bids only from persons so qualified. N.J.S.A. 18:11-9.2. Bidding upon the contracts here involved was restricted accordingly, and both Ruehl and Olenik were so qualified.
On June 11, 1964 the board of trustees rejected the Ruehl bid for the reason that it did not conform to the requirement of the instructions to bidders and the prescribed form of bid in that there was not attached to the bid a balance sheet or statement of financial condition as of December 31, 1963, certified, without qualification, by an independent qualified accountant or auditor. The contract for the plumbing work *10 was thereupon awarded to the defendant Olenik. Of the 26 bidders on the overall job, only plaintiff Ruehl and one other failed to submit the required financial statement with their bid.
Defendants move for dismissal of the complaint filed by plaintiff Ruehl. The court has no alternative but to grant the motion. Since Ruehl was the unsuccessful bidder, it was without standing to challenge the award of the contract to a rival bidder or to attack the allegedly illegal specifications. Waszen v. City of Atlantic City, 1 N.J. 272, 276 (1949); Camden Plaza Parking v. City of Camden, 16 N.J. 150, 158 (1954). However, Mrs. Blumenschine is a citizen and taxpayer, and as such she may attack the award and also raise the question of the illegality of the specifications. Travis v. Highlands, 136 N.J.L. 199, 201 (Sup. Ct. 1947); Waszen v. City of Atlantic City, supra (1 N.J., at p. 276); Scatuorchio v. Jersey City Incinerator Authority, 14 N.J. 72, 94 (1953).
On her behalf it is urged that, by the terms of the statute in question, the preclassification of bidders by the State Department of Education was final and the requirement that a certified financial statement accompany the bid was illegal, null and void. Thus, the Ruehl bid, which failed to include the financial statement, was a legal bid and should have been accepted.
Defendants contend that, by the enactment of the statute, it was not the intention of the Legislature to pre-empt the right of the trustees to secure additional financial information from bidders. They urge that it is to be considered only as restricting prospective bidders to those who had so qualified. They further argue that the requirement of a certified financial statement was reasonable and was calculated to elicit information which would be of assistance to defendant trustees in determining which of the bidders was the lowest responsible one. It was conceded at the oral argument that the requirement here in question was a reasonable one and would be valid in the absence of a finding by the court that the statute in question precluded such requirement.
*11 The title of the statute, as amended by L. 1963, c. 81, s. 20, is "An act concerning education, requiring boards of education to require the classification of bidders, and supplementing Title 18 of the Revised Statutes." It provides for the filing with the State Board of Education by a prospective bidder, of a statement under oath in response to a standard questionnaire prepared by the Board bearing upon the financial ability, adequacy of plan and equipment, organization and prior experience of the prospective bidder, and a classification by the State Department of Education based thereon. N.J.S.A. 18:11-9.3, 18:11-9.4. The classification of bidders by the State Department of Education is made subject to review by the State Commissioner of Education at the request of the prospective bidder, as to his own classification or that of any other person. A further administrative appeal to the State Board of Education is provided for. N.J.S.A. 18:11-9.5.
The statute provides:
"No person shall be qualified to bid on any contract with the board who shall not have submitted a statement as required by section 3 of this act within a period of 6 months preceding the date of opening of bids for such contract. Every bidder shall submit with his bid an affidavit that subsequent to the latest such statement submitted by him there has been no material adverse change in his qualification information except as set forth in said affidavit * * *." N.J.S.A. 18:11-9.7
In accordance with this provision Ruehl furnished, in addition to its certificate of qualification in the amount of $1,000,000, an affidavit which recited that the total amount of incompleted work on contracts on which it was engaged was $200,000.
In the Blumenschine suit the issues for the court's determination are: (1) whether the statute precluded the requirement that the bidders should furnish certified financial statements as part of their bid, and (2) whether Ruehl's bid was properly rejected for failure to do so. The matter has been submitted on stipulation of facts, both parties moving for summary judgment.
*12 Neither the diligence of counsel nor the court's research has produced any New Jersey decision which is dispositive of the present controversy. However, statutes relating to preclassification of bidders are not new to our law. R.S. 40:50-5, originally enacted in 1926, provides for a form of prequalification of bidders by municipal boards or officers. R.S. 52:35-1 et seq. set up a similar but much more elaborate procedure to be followed in connection with bidding on public work furnished to or for the State. It requires prospective bidders to submit to state officials charged with the duty of awarding contracts, statements under oath as to their financial ability, adequacy of plant and equipment, and prior experience. R.S. 52:35-2. Each bidder is then to be classified as to the character and amount of public work on which it will be qualified to submit bids. R.S. 52:35-3. Bidding is confined to those who have so qualified. Ibid. The statute here in question differs from those mentioned in that it places the duty of classification upon a body other than the one clothed with the responsibility of awarding the contract.
The statement of purpose which accompanied the enactment which became N.J.S.A. 18:11-9.1 et seq. read that:
"The purpose of this bill is to require the classification of persons proposing to bid on any public work for the local boards of education. The classification procedure would be handled by the State Board of Education in the same manner that state officials now manage the classification of bidders on public work for the State under Chapter 52:35 of the Revised Statutes. This act would establish a central and comprehensive classification system which would be operated by the State Board of Education for the benefit of the local boards."
Where the application of a statute is involved it is the duty of the court to determine the legislative intention from the plain meaning of the statute and to apply it to the facts. Watt v. Mayor, etc., of Franklin, 21 N.J. 274, 277 (1956). Ordinarily, such intention is to be gleaned from the words used, and they are to be given their ordinary and well understood meaning in the absence of an explicit indication to the contrary. Scatuorchio v. Jersey City Incinerator *13 Authority, supra, 14 N.J., at page 87; Grogan v. DeSapio, 11 N.J. 308, 323 (1953). Only if an ambiguity exists is it necessary to go beyond the words of the statute itself. Richman v. Blank, 45 N.J. Super. 272, 278 (Law Div. 1957); cf. Watt v. Mayor, etc., of Franklin, supra, pp. 277-278. It is to be assumed that each word therein was incorporated by design of the Legislature and the statute should be construed as a whole, giving effect to each and every portion thereof. Monmouth Lumber Co. v. Ocean Township, 9 N.J. 64, 77 (1952); Mellon v. Pennsylvania-Reading Seashore Lines, 7 N.J. 415, 424 (1951).
The title of a statute is a label, not an index, and it has been held that it should not be scrutinized with an overly technical eye. Howard Savings Inst. v. Kielb, 38 N.J. 186, 201 (1962). No broader construction should be given to a statute than its language justifies. Lynch v. Borough of Edgewater, 8 N.J. 279, 285 (1951). A statute should not be so construed as to reach an absurd or anomalous result. Robson v. Rodriquez, 26 N.J. 517, 528 (1958). It is to receive a reasonable construction, to serve the apparent legislative purposes. Alexander v. N.J. Power & Light Co., 21 N.J. 373, 378 (1956).
Keeping in mind the foregoing rules, the court is of the opinion, and holds, that the defendant board of trustees was not prohibited from requiring, as a prerequisite to bidding, that each bidder furnish the certified financial statement referred to, notwithstanding its prior qualification by the State Department of Education. It appears clear from a reading of the statute in question that it was not intended to abrogate the statutory obligation of boards of education to award contracts for the erection, construction, alteration or repair of school buildings on the basis of competitive bidding to the lowest responsible bidder for each branch of construction referred to in the statute. N.J.S.A. 18:11-10. However, it was intended that the classification and qualification of bidders would be determined by the Department of Education in the first instance, and local boards of education were *14 limited to accepting bids from bidders who had been so qualified and classified. In addition, the power to determine whether or not a prospective bidder continued to be qualified, was to be retained by the Department of Education. Thus N.J.S.A. 18:11-9.6 provides:
"Right to reject all bids; review and reconsideration of classification.
Nothing contained in this act shall be construed as depriving any board of education of the right to reject all bids. Where there have been developments subsequent to the qualification and classification of a bidder which in the opinion of the awarding board would affect the responsibility of the bidder, information to that effect shall forthwith be transmitted to the State Department of Education for its review and reconsideration of the classification. Before taking final action on any such bid, the board of education concerned shall notify the bidder and give him an opportunity to present to the State Department of Education any additional information which might tend to substantiate the existing classification." (Emphasis added)
Considered in conjunction with the provisions of N.J.S.A. 18:11-9.7, referred to supra, it seems clear from the above that boards of education were not precluded from questioning the State Department's determination that a bidder was qualified. Whereas N.J.S.A. 18:11-9.5 accorded to a prospective bidder the right to a hearing before the Commissioner of Education as to his classification or the classification of another person, N.J.S.A. 18:11-9.6 imposed upon the local board of education which was required to award a contract a duty to present to the State Department of Education such evidence as might develop bearing upon the classification or qualification of a bidder, to the end that the Department might then reconsider its prior classification. Just as there was a requirement of notice to the person involved in N.J.S.A. 18:11-9.5, so here the board was required to give notice to the bidder before taking final action on his bid. N.J.S.A. 18:11-9.6.
Implicit in the obligation of local boards of education to submit information to the State Department of Education which, in their opinion, would affect the responsibility of a bidder, was the right to seek information bearing thereon. The financial capacity of a bidder is a material and substantial *15 consideration in connection with the award of a contract. Hillside Twp., Union County v. Sternin, 25 N.J. 317, 323 (1957). While N.J.S.A. 18:11-9.7 requires the submission by a prospective bidder of information bearing upon his qualification in affidavit form, a board is not precluded from making additional inquiry. One ready source of information would be the bidder himself, especially where, as here, the matter involved concerns his financial ability to carry out the proposed contract. The certified financial statement called for was reasonably calculated to furnish information bearing upon this phase of qualification. Accordingly, it was proper for defendant board of trustees to require it of all bidders. See William A. Carey & Co. v. Fair Lawn, 37 N.J. Super. 159, 166 (App. Div. 1955); Tufano v. Cliffside Park, 110 N.J.L. 370 (Sup. Ct. 1933); Murdock Contracting Co., Inc. v. Verona, 47 N.J. Super. 102, 107 (Law Div. 1957).
We turn next to consideration of the effect of the failure of plaintiff Ruehl to submit the financial statement called for. In connection with this it is to be noted that at the time of the submission of bids there was no protest or complaint from it concerning this provision. On the contrary, in its bid Ruehl agreed that if it was the successful bidder the necessary financial statement would be furnished. Later, after asserting that the required statement had been omitted from its bid on advice of counsel, it furnished the uncertified statement referred to.
The specifications provided that:
"The Owner may consider informal any bid or bids not prepared and submitted in accordance with the provisions hereof."
And also:
"The Owner reserves the unrestricted right to reject any or all bids * * *."
R.S. 18:6-26 provides that:
"No bid for building or repairing schoolhouses or for supplies shall be accepted which does not conform to the specifications furnished *16 therefor, and all contracts shall be awarded to the lowest responsible bidder."
The rule is well settled that the conditions and specifications on public bidding must apply equally to all prospective bidders, otherwise there is no common standard of competition. Every element which enters into the competitive scheme is to be required equally of all. It may not be left to the volition of the individual bidder to follow or disregard legitimate bid requirements and thus to estimate his bid on a basis different from that required of his rivals. Hillside Twp., Union County v. Sternin, supra, 25 N.J., at p. 322.
Likewise, all bidders are required to comply with the terms imposed, and any material departure therefrom invalidates a nonconforming bid. Id., at p. 323. The significance of the expression "lowest responsible bidder" is not restricted to the amount of the bid; it contemplates that the bid shall conform with the specifications. While minor and inconsequential variations or omissions may be the subject of waiver, if noncompliance to a substantial degree is waived, the bidders no longer stand on a basis of equality and the competition ceases to exist. Id., at p. 324; William A. Carey & Co. v. Fair Lawn, supra, 37 N.J. Super., at p. 165; Albanese v. Machetto, 7 N.J. Super. 188, 191 (App. Div. 1950).
As was said in Case v. Trenton, 76 N.J.L. 696 (E. & A. 1909):
"* * * We must consider the public policy which underlies the requirements of competitive bidding. The purpose of the statute requiring competitive bidding is that each bidder, actual or possible, shall be put upon the same footing. The municipal authorities should not be permitted to waive any substantial variance between the conditions under which bids are invited and the proposals submitted. If one bidder is relieved from conforming to the conditions which imposes some duty upon him, or lays the ground for holding him to a strict performance of his contract, that bidder is not contracting in fair competition with those bidders who propose to be bound by all the conditions. This is the policy which prevents the modification of specifications after bids have been presented, and the awarding of the contract to one of the bidders based upon such revised specifications. * * *" (at pp. 669-700)
*17 In the instant case all bidders were required to meet the terms of the notice by submitting the certified financial statement referred to. With the exception of Ruehl, all bidders on the plumbing work did so. The omission was a material one. Ruehl confirms this when it asserts that compliance would have entailed a great deal of additional expense to it. But the remaining bidders, in reliance on the bid requirements, had undertaken whatever additional expense was required. Presumably, this additional cost, whatever it was, was considered in making up their bids. Whether the additional expense involved here would have been more than the difference between the two lowest bids is beside the point. The fact that the certified financial statement, if it had been furnished, would have borne the same date as the uncertified one which Ruehl asserts it furnished to the State Department of Education, does not excuse the failure to furnish it. The essential requirement was that the statement of financial condition be certified. By its omission to do so Ruehl lost the right to be classed as a bidder. Hillside Twp., Union County v. Sternin, supra, 25 N.J., at pp. 323-324. It follows that its bid was properly rejected and the contract was awarded to the lowest bidder who had complied with the instructions to bidders.
The conclusions thus reached render unnecessary any determination as to the effect of the delay in furnishing the uncertified statement or of the subsequent letter from Ruehl attempting to increase one of the alternate bid figures. It is likewise unnecessary to pass upon the trustees' criticism of plaintiff's financial condition based upon the uncertified statement which was furnished on May 4, 1964.
The complaint is accordingly dismissed and the stay heretofore allowed is vacated.