89 N.J. Super. 93 (1965)
213 A.2d 865
J. TURCO PAVING CONTRACTOR, INC., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
CITY COUNCIL OF THE CITY OF ORANGE, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, AND TRI-COUNTY ASPHALT CORPORATION, A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT, AND HOUSING AUTHORITY OF THE CITY OF ORANGE, A BODY POLITIC AND CORPORATE OF THE STATE OF NEW JERSEY, INTERVENOR.
Superior Court of New Jersey, Appellate Division.
Argued September 29, 1965.
Decided October 13, 1965.
*95 Before Judges CONFORD, KILKENNY and LEONARD.
Mr. James N. Marinello argued the cause for appellant (Messrs. Marinello, Henkel and Soriano, attorneys).
Mr. Felix J. Verlangieri argued the cause for respondent City Council of the City of Orange.
Mr. Everett M. Scherer argued the cause for respondent Tri-County Asphalt Corporation (Messrs. Riker, Danzig, Scherer & Brown, attorneys; Mr. Theodore R. Monica, Jr. on the brief).
The opinion of the court was delivered by KILKENNY, J.A.D.
Plaintiff contractor's suit in the Law Division, a proceeding in lieu of prerogative writs challenging the legality of an award of a municipal contract for a public improvement by the City Council of the City of Orange to defendant contractor, Tri-County Asphalt Corporation, instead of to plaintiff as the low bidder, was dismissed by the Law Division on motion of defendants before trial, on the sole ground that plaintiff, who was concededly not a taxpayer of the City of Orange and had not joined a taxpayer as a plaintiff in the action, had no legal standing to bring the suit. Plaintiff appeals from the judgment of dismissal.
Plaintiff was the low bidder at $496,430.50 on the main contract, and at $374,618 on the alternate contract. Tri-County Asphalt Corporation was the next lowest bidder, but was $34,621.50 higher than plaintiff on the main contract, and $40,071.15 higher on the alternate contract. The city council, after a hearing conducted, rejected plaintiff's bid on the ground that (1) plaintiff was not qualified by experience to perform the work required by the contract, and (2) plaintiff had failed to furnish the affidavit, which the advertisement for bids required to be submitted at the time of submission of bids, verifying that plaintiff had an available source of supply for the ready-mixed concrete required in the *96 performance of the work. The contract was awarded to defendant contractor. No stay having been obtained despite plaintiff's application therefor, defendant contractor has proceeded with the job and, as we were told at oral argument, the work has been about 50% completed.
The Law Division made no factual determination as to plaintiff's qualifications to do the work required by the contract, and did not resolve the question as to whether the city council was legally justified in rejecting plaintiff's low bid because of its failure to submit with its bid the required affidavit as to the ready-mixed concrete. As noted above, dismissal of the suit was based solely on the ground that plaintiff, though it was the low bidder, had no legal standing to sue.

I.
In holding that a plaintiff, who is not a taxpayer of a municipality or who has not joined a taxpayer of the municipality, has "neither legal standing nor sufficient interest to attack the action of a public body of said municipality in the award of a construction contract," the Law Division relied upon the following cases as legal support for its ruling: Albert F. Ruehl Co. v. Bd. of Trustees, Industrial Ed., 85 N.J. Super. 4 (Law Div. 1964); James Petrozello Co. Inc. v. Chatham Tp., 75 N.J. Super. 173 (App. Div. 1962); Camden Plaza Parking v. Camden, 16 N.J. 150 (1954); Waszen v. Atlantic City, 1 N.J. 272 (1949); McGovern v. Trenton, 60 N.J.L. 402 (Sup. Ct. 1897).
These cases do not support the broad proposition of law laid down by the Law Division in the instant case. In fact, McGovern v. Trenton expressly held that a person who, as the lowest bidder, is entitled to have a municipal contract awarded to him may, by certiorari, question the validity of its award to another. As the court therein said:
"Assuming his claim that he was entitled to have the contract awarded to him to be well founded, it cannot be denied that he was *97 specially and injuriously affected by the action complained of, and is entitled to question its validity by certiorari." (60 N.J.L., at p. 402)
It was with reference to McGovern's further contentions that the contract awarded ought to be annulled because of illegality "of the advertisement for bids and of certain of the specifications" upon which the contract rested, that the court held that his mere status as a bidder would not give him legal standing, in the absence of some "personal or property interest to be specially and immediately affected by the action complained of." (60 N.J.L., at p. 404) As the court observed, "He is not, so far as the case shows, a taxpayer of the city, and has not intervened as such for the purpose of preventing the illegal expenditure of municipal funds." Ibid.
Waszen v. Atlantic City, supra, held that "unsuccessful bidders * * * have no standing to challenge the award of the contract to a rival bidder or to attack allegedly illegal specifications." (1 N.J., at p. 276; italics ours) "The rationale of such a holding is that one cannot endeavor to take advantage of a contract to be awarded under illegal specifications and then, when unsuccessful, seek to have the contract set aside." However, the court found that the coplaintiff Fischer was a citizen and taxpayer, and as such might attack the award and also raise the question of the "illegality of the specifications." The specifications were held to be unreasonable and illegal and the resolution awarding the contract was set aside. Here again, the attack was upon the specifications, and that required the presence of a taxpayer as plaintiff. Plaintiff contractor, in the Waszen case, was merely an "unsuccessful bidder" attacking the very specifications upon which he submitted his bid. It was not a suit by the low bidder challenging the award to a higher bidder, without more, as in the instant case.
In Camden Plaza Parking v. City of Camden, supra, as in Waszen, the unsuccessful bidder attacked the award to another bidder of a lease from the city of municipally-owned land for the construction and maintenance of an off-street parking *98 facility upon the ground that "the invitation to bid published by the city was not sufficiently precise and definite in respect of the essential elements entering into the competitive scheme as to permit of bidding according to a common standard of competition." It was with relation thereto that the Supreme Court said:
"The unsuccessful bidder, Camden Plaza Parking, Inc., has no standing to make this attack. Waszen v. City of Atlantic City, 1 N.J. 272 (1949). But the Heisers [plaintiffs in a consolidated suit], as citizens and taxpayers, may attack the award to Nedmac and also raise the question of the sufficiency of the specifications for bidding." (16 N.J., at p. 158; italics ours)
The Camden case did not hold that the lowest bidder, not challenging the specifications and itself in full compliance with the invitation for bids and accompanying specifications, had no legal standing to question judicially the award to a higher bidder. It held the specifications legally insufficient and, since taxpayers appeared as parties plaintiff, voided the municipal contract.
James Petrozello Co., Inc. v. Chatham Tp., 75 N.J. Super. 173 (App. Div. 1962), also involved an action by a taxpayer and an unsuccessful bidder to set aside the award of a garbage contract by the township. We held that the determination of the lowest bidder was based upon a variable factor involving the future growth of the township, and this factor rendered the award invalid since there was no standard or norm to guide or control the exercise of the municipal power. It was against this background that we said:
"Of course, the plaintiff contractors are without legal standing to challenge the validity of the specifications, not being taxpayers of the defendant municipality." (at p. 179; italics ours)
However, we upheld the right of plaintiff taxpayer to attack the specifications and held the specifications invalid for the reason noted above.
The Law Division adverted to the reference in our opinion that the bidding statutes are for the benefit of the *99 taxpayers and not the bidders, and they should be construed with sole reference to the public good. But this does not derogate from the right of the low bidder, who has fully complied with the bidding statutes and the conditions expressed in the advertisement for bids, and who does not question the specifications, from seeking judicial review of the award of a municipal contract to a higher bidder.
In Albert F. Ruehl Co. v. Bd. of Trustees, supra, the trial judge said in his opinion:
"Since Ruehl was the unsuccessful bidder, it was without standing to challenge the award of the contract to a rival bidder or to attack the allegedly illegal specifications. Waszen v. City of Atlantic City, 1 N.J. 272, 276 (1949); Camden Plaza Parking v. City of Camden, 16 N.J. 150, 158 (1954). However, Mrs. Blumenschine is a citizen and taxpayer, and as such she may attack the award and also raise the question of the illegality of the specifications." (85 N.J. Super., at p. 10; emphasis added)
As noted above, the rule in Waszen and Camden was limited to an attack upon the specifications. Neither case involved facts similar to those before us. In Ruehl, it was determined that plaintiff's bid had been properly rejected because of its failure to submit the financial statement called for in the bidding specifications. In the instant case, there has been no judicial ruling as to the propriety of the rejection of plaintiff's bid.
The foregoing analysis of the cases relied upon by the Law Division demonstrates that the distinction laid down in McGovern v. Trenton, supra, between the right of the lowest bidder, without regard to his taxpayer status, to challenge the award of a municipal contract to a higher bidder, and the lack of legal standing in an unsuccessful bidder, who is not a taxpayer, to obtain a judicial review of the legality of the specifications, still obtains and has not been changed by any of the cited later decisions. See Kingston Bituminous, etc. v. Trenton, 134 N.J.L. 389 (Sup. Ct. 1946); 10 McQuillin, Municipal Corporations (3d ed. 1950), § 29.87.
Moreover, we recognized this distinction in William A. Carey & Co. v. Borough of Fair Lawn, 37 N.J. Super. 159 *100 (App. Div. 1955). In that case plaintiff contractor challenged the award of a municipal garbage collection contract to another. Assuming that plaintiff was the lowest bidder, the trial court held that its status to maintain the action was solely as an unsuccessful bidder and not as a taxpayer or citizen, and it was precluded from attacking the municipal proceedings because its own proposals failed to conform with the specifications of the borough in several particular respects. Plaintiff attempted at the hearing to prove that the successful contractor's bid was not in compliance with the bid, but the trial court refused to allow it to do so. We affirmed and, in doing so, held that "plaintiff's action must stand or fall on its own entitlement to the contract, it not being a taxpayer or citizen vested with status as such to institute a plenary legal challenge of the municipal action." 37 N.J. Super., at p. 168; (emphasis added) This language indicates that the lowest bidder may seek a judicial review of the award of a municipal contract, but "must stand or fall on its own entitlement to the contract." We considered the case on its merits as to plaintiff's alleged failure to comply with the specifications, and agreed with the trial court that there was such noncompliance on plaintiff's part.
See, too, Arthur Venneri Co. v. Paterson Housing Authority, 29 N.J. 392 (1959), in which the plaintiff lowest bidder's attack upon the award of a public contract to a higher bidder was reviewed on the merits of plaintiff's qualifications.
Assuming plaintiff's claim in the instant case to be well founded  that it was entitled to have the contract awarded to it as the lowest responsible bidder  we conclude that it was specially affected by the action complained of and was entitled to bring a proceeding in lieu of prerogative writs to question the validity of the award of contract to another higher bidder.

II.
The next question is whether we should remand to the Law Division for the taking of proofs and resolution of the remaining *101 issues, or exercise our original jurisdiction and completely determine the cause under review. R.R. 1:5-4; R.R. 2:5; New Jersey Constitution (1947), Art. VI, § V, par. 3.
The record before us is not sufficiently adequate to warrant a determination of the propriety of the municipal action in rejecting plaintiff's low bid on the ground that it lacked the experience qualification to perform the work embraced by the contract. There was no hearing on this issue in the Law Division, and the record on appeal does not contain any transcript of the hearing before the city council on this phase of the matter. We do not even know whether such a transcript was made or whether the parties would stipulate to submit this issue to us on any such transcript, if one has been made.
On the other hand, the record before us, as supplemented following oral argument, is sufficient to enable us to dispose of the question whether plaintiff's failure to submit with its bid the required affidavit, showing that it had an available source of supply of the ready-mixed concrete needed to perform the job, justified the rejection of its bid by the city council for that reason.
The specifications provided under subdivision 1.2.7  "SUBMITTING PROPOSAL"  that each bid shall be accompanied by a certificate from a surety company that it would provide a bond in the full amount of the contract, and further:
"If the bidder is not the actual owner of the equipment or the plant or plants producing ready-mixed concrete or bituminous paving materials required for the completion of the contract, he shall furnish an affidavit from an approved producer stating the location of the plant from which the materials will be obtained and that the material will be furnished in the quantities necessary and at the times required for the progress and completion of the contract."
Plaintiff admits that it did not accompany its bid with the required affidavit. In fact, the affidavit from an approved producer of ready-mixed concrete was not furnished until November 9, 1964, although the bid proposal was submitted on August 25, 1964.
*102 Plaintiff attempts to explain away its noncompliance with the bidding requirement on the ground that it interpreted the specification in question to require an affidavit "only if the bidder was not the owner of the equipment or plant producing ready-mixed concrete or bituminous paving materials." (Emphasis ours) Since Jerry Turco was the principal owner of plaintiff corporation and also principal owner of Turvan Asphalt Company, Inc., which did produce bituminous paving materials, plaintiff maintains that it did own a plant "for the furnishing of bituminous paving materials," and thus the requirements of the specification were met.
Plaintiff's interpretation of the provision requiring the affidavit is a distortion of the plain meaning of the language used. Performance of the contract required both ready-mixed concrete and bituminous paving materials in substantial quantities. The municipal officials wanted, at the time the bids were submitted, either an assurance that the bidder owned its own plant "or plants" producing both concrete and bituminous asphalt, or an affidavit from an approved producer of each of these required materials. Not only does plaintiff seek a disregard of the separate corporate entity which owned the bituminous asphalt plant, but it would read unnaturally into the specification that ownership of a bituminous asphalt plant, without more, would dispense with the required affidavit as to the source of supply of the ready-mixed concrete. Such a strained interpretation of the specification is unwarranted.
The item of concrete was a substantial factor in the job to be done. The city council had decided to accept the alternate proposal which called for concrete curbing instead of granite curbing. An engineering breakdown of the job and plaintiff's bid shows that of its total bid of $374,618 to do the work called for under the alternate contract the concrete work amounted to $94,005, or 25.1% of the job. The asphalt under the alternate contract amounted to $51,060 under plaintiff's bid, or 14.4% of its total bid. Thus, the supply of the concrete was not a de minimis matter and the provision of the *103 specification for the affidavit in question went to a substantial feature of the work to be done.
Plaintiff alleges that the affidavit of November 9, 1964 concerning the availability of ready-mixed concrete was accepted on that date on behalf of the city council by its attorney. However, as pointed out in Hillside Twp. v. Sternin, 25 N.J. 317 (1957):
"The law is clear that bids must meet the terms of the notice. The significance of the expression `lowest bidder' is not restricted to the amount of the bid; it means also that the bid conforms with the specifications. * * * Minor or inconsequential variances and technical omissions may be the subject of waiver. * * * But any material departure stands in the way of a valid contract, and the defaulting person cannot be classed as a bidder at all. * * * This is because the requirements are generally considered to be mandatory or jurisdictional. * * * Substantial noncompliance cannot be waived by the municipality. * * * The reason for this bar is obvious. When the waiver occurs, the bidders no longer stand on a basis of equality and the advantages of competition are lost." (at p. 324)
To the same effect see Case v. Trenton, 76 N.J.L. 696 (E. & A. 1909); Tufano v. Cliffside Park, 110 N.J.L. 370 (Sup. Ct. 1933); Albanese v. Machetto, 7 N.J. Super. 188 (App. Div. 1950); Albert F. Ruehl Co. v. Bd. of Trustees, Industrial Ed., 85 N.J. Super. 4, 16 (Law Div. 1964).
The failure of plaintiff to furnish with its bid the affidavit provided for in the specifications was a substantial noncompliance with the bid requirements. Accordingly, the city council was legally justified in rejecting plaintiff's bid for this reason, independently of any other. In fact, it was powerless to waive such a substantial noncompliance.
The judgment of the Law Division, dismissing the complaint, is affirmed, not because plaintiff had no legal standing to bring the action for want of taxpayer status, if it was the lowest responsible bidder and had complied with the specifications, but because it had no legal standing to challenge the award to another bidder when it had not complied with the specifications and thus had not established its own entitlement to the contract.
No costs by any party as against any other party.