**230**

The TUPMAN THURLOW CO., Inc.,
Plaintiff,

United States of America,
Intervening Plaintiff,

v.

A. W. TODD, as Commissioner of Agriculture and Industries for the State of Alabama, His Successors in Office and Servants, Agents, Employees or Representatives of His Department, or Others Acting on His Behalf or in Concert with Him, Defendants.

Civ. A. No. 2074–N.

United States District Court
M. D. Alabama, N. D.
June 1, 1964.

James E. Clark, of London, Yancey, Clark & Allen, Birmingham, Ala., and James H. Lundquist, of Barnes, Richardson & Colburn, New York City, for plaintiff, Tupman Thurlow Co., Inc.

Ben Hardeman, U. S. Atty., Montgomery, Ala., Fred William Drogula and Carl Eardley, Attorneys, Department of Justice, Washington, D. C., for intervening plaintiff, United States of America.

Richmond M. Flowers, Atty. Gen., State of Alabama, Montgomery, Ala., and Gordon Madison and George O. Miller, Asst. Attys. Gen., for defendants.

JOHNSON, District Judge.

This action was instituted on May 11, 1964, by The Tupman Thurlow Co., Inc., against A. W. Todd as Commissioner of Agriculture and Industries for the State of Alabama, his successors in office and servants, agents, employees, or other representatives of his department, and others acting on his behalf or in concert with him. The plaintiff, a New York corporation, seeks to have this Court issue a preliminary injunction against certain actions committed by and a course of conduct followed by the defendant Todd, which actions and conduct have resulted, according to the plaintiff, in the seizure and impoundment of plaintiff's meat imports by Todd and others acting for and on his behalf; said meat having been duly inspected and approved by the Commonwealth of Australia and the United States Department of Agriculture. Upon the filing of this action, this Court, because of the public interests, ordered and directed that the United States of America through the United States Department of Justice, appear and participate in this cause in the capacity of amicus curiae.

The matter came on for a hearing on May 28, 1964. As the hearing progressed, the United States, without any objection by either the plaintiff or the defendant, requested and received leave of this Court to intervene in this cause as a party plaintiff. During the course of the hearing, upon motion of the United States and without any objection on the part of either the plaintiff or the defendant, the issues were enlarged to include a request that the inquiry and request for relief relate to the seizure and impoundment of imported meat throughout the State of Alabama and belonging to all foreign meat importers similarly situated with plaintiff, The Tupman Thurlow Co., Inc.

The case was submitted to this Court, sitting without a jury, on the issues as outlined above and on the proof offered by the parties. Upon consideration of the credible evidence, consisting of the oral testimony of several witnesses, together with exhibits thereto, this Court now proceeds to make and enter the appropriate findings of fact and conclusions of law, and, as authorized by Rule 52, Federal Rules of Civil Procedure, incorporates said findings and conclusions in this memorandum opinion.

The plaintiff, The Tupman Thurlow Co., Inc., is regularly engaged in the business of the importation, distribution and sale of frozen meats and meat products throughout the United States, in-

cluding the State of Alabama. The plaintiff imports pursuant to an agreement dated February 17, 1964, between the United States of America and the Commonwealth of Australia. Plaintiff's imports accounted for approximately fifteen percent of the total United States imports of frozen meats during the year 1963 and up until this date. The evidence reflects that similar agreements have been concluded between the United States and the Governments of New Zealand, Ireland and Mexico. These agreements have been entered into for the purpose of fostering mutual friendship, commerce and navigation. The agreements provide, generally, for nondiscriminatory treatment of products imported into this country and exported by the United States to other countries with whom the treaties exist. According to the evidence in this case, these trade agreements are of considerable economic benefit to United States producers of products for sale abroad, and are generally in favor of the United States. As to the agreement with Australia, the balance of trade between the two countries is overwhelmingly in favor of the United States.

The evidence in this case further reflects that the defendant Todd in his capacity as Commissioner of Agriculture and Industries for the State of Alabama, undertook on or about April 15, 1964, a "stepped up" program of inspection of imported beef. This program was announced publicly by Commissioner Todd and received considerable news coverage. According to Todd's announcements to the Press, the primary basis for his action is that the importation of beef and the distribution and sale of that beef in the State of Alabama has "cut deeply into the domestic beef market and, * * * [has] produced a distress situation" in the Alabama beef industry. Todd further announced, "I guarantee you that not one pound of it will be unchecked—and I mean checked with the intentions of finding reasons for condemning it." Pursuant to this program, as inaugurat-

ed by the Alabama Commissioner of Agriculture and Industries, the Alabama State Department of Agriculture, upon specific directions from Commissioner Todd, impounded approximately one million pounds of frozen beef that had been imported into the United States in accordance with the trade agreements between this country and the several countries heretofore named. Todd, upon this hearing, maintained that his purpose in impounding the imported beef was to protect the safety and welfare of the people of the State of Alabama from unwholesome and adulterated beef. He denied that he was motivated by any economic considerations. There was no credible evidence presented by the defendant Todd demonstrating that there is any real or immediate threat to the health and safety of the people of Alabama stemming from the introduction of foreign meat into this State.

This Court specifically finds that the defendant Commissioner of Agriculture and Industries for the State of Alabama, by his seizure and impoundment of foreign meat in this State during the last six weeks, has been using his police power,[1] primarily as a basis for attempting to suppress competition, under the pretext of protecting the health and safety of the people of the State of Alabama. In this connection, it is significant that, in order to implement and make more effective his program against the importation into the State of Alabama of any and all foreign beef, the defendant Todd, through his State Department of Agriculture, has provided and is providing signs to be displayed by retailers throughout the State to the effect that "Only domestic beef is sold here." This action, the Court finds, is designed to discriminate against imported meat in favor of domestic meat. His actions, as demonstrated by the evidence in this case, have been nothing more than a guise or a pretext to enable him to exclude the foreign, imported meat from Alabama for eco-

1. The defendant Todd purports to act under the authority of Title 2, §§ 306 and 494, Code of Alabama, Recompiled 1958.

nomic reasons. The evidence in this case further reflects that approximately one-half of the total foreign meat seized and impounded by the defendant Todd has now been released by him on the condition that the meat will be removed from the State of Alabama. Of the 300,000 to 400,000 pounds of beef presently impounded by the defendant Todd, the evidence in this case reflects that after the inspection and testing by the officials and employees of the Alabama State Department of Agriculture over a period of the past six weeks, no impurities have been discovered, no adulteration has been found, and no unwholesomeness has been detected. The Alabama official who is supervising the testing of this impounded meat, acting under and pursuant to the directions of the defendant Todd, states that they have not yet come to any final conclusions concerning the wholesomeness of this meat, and the only indication that the meat has anything wrong with it is that "it keeps too well." The suspicion on the part of the State officials is that the meat contains some kind of preservative; however, the officials who testified as to this suspicion (which forms the only basis for their continuing to impound this meat) also testified that they are not familiar with the "keeping" qualities of Australian beef as opposed to domestic beef, and that they are not familiar with the normal "keeping" qualities of quick frozen beef. The Alabama officials admitted that, after receiving nineteen laboratory reports on the foreign beef which they have impounded, they have found nothing in any of the beef that is deleterious. They further testified that they had established no date for the completion of their tests and that the time for the completion of their tests on this foreign meat was "very indefinite." As opposed to this "suspicion" by the State of Alabama officials, the evidence in this case reflects that after the filing of this case, the plaintiff's meat was tested by recognized experts in the field of food chemistry. The meat was subjected to all standard tests, including bacterial, coliform, rancidity and protein evaluation tests. These are all the standard tests used on meats and meat products, and plaintiff's imported meat was found to be entirely wholesome. The evidence in this case further reflects that all recognized standard tests for wholesomeness can be performed within a period of from three to four days.

This Court further finds from the evidence in this case that all the beef imported into the United States, pursuant to the trade agreements between this country and foreign countries, including specifically Australia, is subjected to inspections for wholesomeness prior to its importation by the importing country, the manner of inspecting being substantially the same type inspection procedures as used in this country, and having been previously approved by the United States Government; further, the United States Government, acting through its Department of Agriculture, strictly regulates the inspection of meat and meat products imported into this country and has perfected an elaborate and rigid inspection system designed to protect the consumers from unwholesome meat products. All the meat impounded by the defendant Todd in this case was so inspected prior to the time of its importation into the United States and into the State of Alabama.

This Court further finds and concludes that the course of conduct as followed by the defendant Todd in this case in seizing and impounding imported meat and meat products for the purpose of preventing their introduction into Alabama markets in competition with Alabama products, constitutes a serious and unlawful burden on interstate commerce. A state cannot, consistent with Article I, § 8, Clause 3, of the Constitution of the United States—which delegates to the United States of America the exclusive power to regulate commerce between the United States and foreign nations and among the several states—put any barriers around its borders to keep out trade from other states and countries. Such action on the part of a

state unduly interferes with the supreme power in the United States of America. Nippert v. Richmond, 327 U.S. 416, 66 S.Ct. 586, 90 L.Ed. 760; Crossman v. Lurman, 192 U.S. 189, 24 S.Ct. 234, 48 L. Ed. 401. The course of conduct as followed by the defendant Todd, and as reflected by the evidence in this case, has already impaired the relationship between the United States of America and Australia, New Zealand and Mexico. On May 5, 1964, the Government of Australia sent to the United States Department of State a diplomatic note expressing serious concern over the action taken by Commissioner Todd and stating that such action was in violation of our international agreement with that country. Similar protests were received by the State Department of the United States from the Governments of Mexico and New Zealand.

■ This Court recognizes that the State of Alabama can exercise its inherent police power over goods moving in interstate commerce—as can other states —provided the exercise of that authority is a bona fide one in the sense that it is reasonably designed to avert a real and substantial threat to the health and safety of its citizens. Hannibal & St. J. Railroad Co. v. Husen, 95 U.S. 465, 24 L.Ed. 527; Plumley v. Massachusetts, 155 U.S. 461, 15 S.Ct. 154, 39 L.Ed. 223. However, the law is clear that a state may not under the guise of exerting its police power, or enacting inspection laws, make discriminations against the products and industries of foreign countries and some of the other states in favor of the products and industries of its own. Brimmer v. Rebman, 138 U.S. 78, 11 S.Ct. 213, 34 L.Ed. 862; Currin v. Wallace, 306 U.S. 1, 59 S.Ct. 379, 83 L.Ed. 441; Clason v. Indiana, 306 U.S. 439, 59 S.Ct. 609, 83 L.Ed. 858. As recited above, the defendant Todd has no reasonable cause to believe,

and at the time he seized and impounded the foreign meat involved in this case had no reasonable cause to believe, that the meat or meat products that he has impounded, or has announced that he intends to impound, are impure or unwholesome. He has received no reports of illnesses or contamination; he has no evidence of impurities, and no reasonable cause to believe that the imported meat is below standard in any respect. Therefore, there was no real and compelling danger to the people of the State of Alabama to the extent that the defendant was justified in attempting to invoke the police power of the State of Alabama in the seizure and impoundment of all meat imported into this country that came into this State. The "possibility" or "suspicion" that some of the meat may be unwholesome or adulterated does not justify the action taken by the defendant Todd in this case. Schollenberger v. Pennsylvania, 171 U.S. 1, 18 S.Ct. 757, 43 L.Ed. 49. This Court further finds and concludes that the action of the defendant Todd in this case concerning the preparing, furnishing and posting of signs in the retail outlets for imported meat within the State of Alabama is also in violation of 19 U.S.C.A. § 1306(b). This statute recites, among other things, that all imported meats shall "after entry into the United States in compliance with such rules and regulations, be deemed and treated as domestic meats * * *."

■ The preliminary injunction as prayed for by the plaintiff, The Tupman Thurlow Co., Inc., and the intervening plaintiff, the United States of America, will be granted. A decree will be issued in this case designed (1) to release the approximately eleven thousand pounds of beef owned by this plaintiff that is presently impounded by the defendant Todd in the Birmingham, Alabama, area;[2]

2. The evidence in this case reflects that this is a "transitory" action as opposed to a "local" action, and involves a course of action on the part of this defendant that relates to property in various localities throughout the State of Alabama. It follows, therefore, that the decree in this case should to the extent that it enjoins the defendant Todd from continuing his course of conduct as herein related, run throughout the entire State. Philadelphia·Co. v. Stimson, 223 U.S. 605, 32 S. Ct. 340, 56 L.Ed. 570.

(2) to release all other imported meat and meat products now impounded by the defendant Todd in various locations throughout the State of Alabama; (3) to forbid and enjoin any further seizures and impoundment of foreign, imported meat and meat products by the defendant, or other officials and employees of the State of Alabama, for the reasons motivating the defendant Todd in this case; and (4) to cause the removal of signs prepared by the State of Alabama, through the defendant Todd, and furnished to the retail dealers, the posting of these signs having the effect of violating 19 U.S.C.A. § 1306(b).

Out of an abundance of caution and in view of the fact that the defendant Todd has had this meat impounded for over a month, this Court will also order and direct that the inspectors of the United States Department of Agriculture inspect and approve this meat prior to the time it is released for distribution and sale.