150 N.J. Super. 533 (1977)
376 A.2d 203
K.S.B. TECHNICAL SALES CORP. AND SIEGLINDE FAZIO, PLAINTIFFS,
v.
NORTH JERSEY DISTRICT WATER SUPPLY COMMISSION OF THE STATE OF NEW JERSEY, DEFENDANT,
v.
BRISCOE/COURTER/CONDUIT, A JOINT VENTURE, TERMINAL CONSTRUCTION CO. AND STATE OF NEW JERSEY, INTERVENORS.
Superior Court of New Jersey, Chancery Division.
Decided May 4, 1977.
*537 Messrs. McCarter & English, attorneys for plaintiffs (Mr. Julius B. Poppinga appearing; Mr. Bernard Babb of the New York Bar, of counsel).
Messrs. Teltser & Perle, attorneys for defendant (Mr. Harold R. Teltser appearing).
Messrs. McElroy, Connell, Foley & Geiser, attorneys for intervenor Briscoe/Courter/Conduit (Mr. Theodore W. Geiser appearing).
Messrs. Heller & Laiks, attorneys for intervenor Terminal Construction Co. (Mr. Herbert R. Ezor appearing).
*538 Mr. William F. Hyland, Attorney General, attorney for intervenor State of New Jersey (Mr. Michael S. Bokar appearing).
CIOLINO, J.S.C.
North Jersey District Water Supply Commission (Commission) is a public agency organized and functioning under N.J.S.A. 58:5-1 et seq. It created and operates a water system known as the Ramapo-Wanaque System, with a reservoir and facility located in Wanaque, New Jersey, with aqueducts serving water to Newark, Clifton, Paterson, Passaic, Bloomfield, Glen Ridge, Kearney, Montclair and Bayonne.
This action is brought by plaintiffs K.S.B. Technical Sales Corp. (K.S.B.) and Sieglinde Fazio, a taxpayer, against the Commission to restrain it from receiving, evaluating or accepting any bids in connection with Contract W-76, Wanaque Filtration Plant, or awarding any contract which contains a "Buy American" specification. Intervention has been permitted on behalf of the State of New Jersey and two bidders, Terminal Construction Corporation (Terminal) and Briscoe/Courter/Conduit, a joint venture (Briscoe).
On February 9, 1977 the Commission caused to be advertised an invitation to bid on Contract W-76. Bids were returnable at 11 A.M., Wednesday, April 13, 1977, at the office of the Commission, at which time they were to be opened. Included in the specifications are requirements for the water pumps needed in this project.
K.S.B. is a New York corporation which imports and distributes water-pumping equipment made in and exported from foreign countries. K.S.B. is a wholly-owned subsidiary of Klein Schanzlin Becker AG, a West German manufacturer of pumps and pumping equipment. K.S.B. obtained a copy of the specifications for Contract W-76 with a view towards submitting bids for the pumps to be used on the project to a number of general contractors who proposed to bid in connection with the project.
*539 On April 4, 1977, nine days prior to the date on which the bids were to be opened, an addendum to the contract specifications was sent to all prospective bidders. Item 9 of this addendum included, for the first time, a specification that only products manufactured in the United States, wherever available, be used in the project, citing as authority N.J.S.A. 40A:11-18. Such a provision is commonly known as a "Buy American" specification.
On April 11, 1977 K.S.B. instituted an action against the Commission in the United States District Court for the District of New Jersey seeking to restrain the Commission's bidding process due to the alleged invalidity of the "Buy American" specification. As a result of those proceedings a consent order, dated April 13, 1977, appointed a conservator to collect the bids for the Commission and hold them unopened until further order of the court. It also ordered the Commission to send a mailgram, on April 13, 1977, to all persons and entities who purchased plans and specifications for Contract W-76, reading:

CONTRACT W-76

ADVERTISEMENT FOR SUPPLEMENTAL BIDS WANAQUE FILTER PLANT
A COURT ACTION HAS BEEN INSTITUTED IN WHICH THE CONSTITUTIONALITY OF THE `BUY AMERICAN' (N.J.S. 40A:11-18) REQUIREMENT OF ADDENDUM NO. 1 TO SPECIFICATIONS FOR CONTRACT W-76, WANAQUE FILTER PLANT HAS BEEN CHALLENGED. THIS MAY AFFECT THE VALIDITY OF BID PROPOSALS SUBMITTED ON APRIL 13, 1977.
ALL BIDS SUBMITTED ON APRIL 13, 1977, HAVE AND SHALL BE HELD, UNOPENED, BY THE DESIGNEE OF THE COURT UNTIL FURTHER ORDER OF THE COURT WHICH IS EXPECTED SHORTLY.
ACCORDINGLY, YOU ARE INVITED TO SUBMIT A BID (OR IF YOU HAVE HERETOFORE SUBMITTED A BID, THEN AN ALTERNATE BID) BASED ON THE USE OF PRODUCTS REGARDLESS OF WHETHER OR NOT MANUFACTURED IN THE UNITED STATES.
FURTHER, THE SUBMISSION OF AN ALTERNATE BID HAVING A DIFFERENT MANUFACTURER THAN IS NAMED IN AN ORIGINAL BID SHALL NOT BE DEEMED TO VIOLATE *540 THE REQUIREMENT OF ADDENDUM NO. 1 THAT ONLY ONE MANUFACTURER IS TO BE LISTED FOR EACH ITEM.
ALL BIDS IN RESPONSE TO THIS FURTHER NOTICE SHALL BE SEALED AND WILL BE RECEIVED BY THE NORTH JERSEY DISTRICT WATER SUPPLY COMMISSION IN ITS OFFICE IN WANAQUE, NEW JERSEY 07065 UNTIL 11:00 A.M. LOCAL TIME ON FRIDAY, APRIL 22, 1977, AND WILL ALSO BE HELD, UNOPENED, BY THE DESIGNEE OF THE COURT UNTIL FURTHER ORDER OF THE COURT.
This mailgram was sent as directed and only the six original bidders submitted further bids, which bids were also impounded by the conservator.
At the conclusion of the hearing before the United States District Court, Judge Meanor invoked the doctrine of abstention to give the state courts an opportunity to resolve the unsettled question of state law raised by this litigation. R.R. Comm of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). On April 20, 1977 K.S.B. initiated the present action by order to show cause.
Plaintiff sought a declaration that N.J.S.A. 40A:11-18 is unconstitutional; a declaration that N.J.S.A. 52:32-1 et seq. and N.J.S.A. 52:33-1 et seq. are unconstitutional; to declare N.J.S.A. 40A:11-18, 52:32-1, et seq. and 52:33-1 et seq. inapplicable to any bidding proposal published by the Commission; that N.J.S.A. 40A:11-18, 52:32-1 et seq. and 52:33-1 et seq. contravene public policy, and restraining the Commission from receiving, opening, evaluating or awarding a contract containing the Buy American specification and striking that provision from the contract. At a hearing conducted at the time of the filing of the order to show cause and complaint, the Commissioner was temporarily restrained from opening, evaluating or awarding a contract in response to any bidder's proposal.
Due to the urgent public need and the $40,000,000 expense involved in this filtration plant project, and the undisputed factual posture of the case, counsel requested and the court granted an expedited hearing, which was conducted *541 on April 28, 1977. Decision was rendered May 4, 1977.
The issues presented and determined are as follows:
I. Under the abstention doctrine, are federal constitutional issues, as well as unsettled state law issues, presented to this court for determination?
II. Do plaintiffs have standing to bring this action?
III. Are N.J.S.A. 40A:11-18, 52:32-1 et seq. and 52:33-1 et seq. applicable to the Commission?
IV. Assuming any of the aforementioned statutes to be applicable, are they unconstitutional in violation of the Commerce Clause, Art. I, § 8 of the United States Constitution, or the Supremacy Clause, Art. VI, par. 2, of the United States Constitution?
V. Should defendant be enjoined from receiving, opening, evaluating or awarding a contract in response to any bidder's proposal prepared in accordance with the terms of the addendum incorporating the "Buy American" provision?

I. Abstention

Being mindful that under the abstention doctrine a party litigant may reserve its right to return to the United States District Court for resolution of federal constitutional issues, the court inquired at the inception of argument whether any party desired to make such a reservation. England v. Louisiana State Bd. of Med. Examiners, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964). All parties elected to present all issues raised, federal as well as state, to this court. Accordingly, this opinion determines all issues presented.

II. Standing

K.S.B. alleges that the "Buy American" addendum improperly prevents it from bidding, and because it is so prevented, it has standing to challenge the validity of that requirement. The Commission contends that K.S.B., as a *542 potential subcontractor of a potential bidder and which will not enter into a contractual relationship with the Commission, lacks standing to maintain this action. Although K.S.B. and the Commission will not have a direct contractual relationship, for the purpose of standing it is of no moment.
The court notes that specifications for the pumping equipment to be used in Contract W-76 state that the pumps are to be supplied by Allis-Chalmers, DeLaval, or "approved equal." Thus the Commission must approve the pumping equipment supplier in any event.
Standing requires a litigant to allege a sufficiently personal stake in the outcome of a controversy, a concrete adverseness, in order to insure effective presentation of the legal interests claimed to require judicial redress. Crescent Park Tenants Ass'n v. Realty Equities Corp. of New York, 58 N.J. 98 (1971). K.S.B. contends that it was precluded from bidding as a result of the addendum. As such, it asserts a sufficient adverseness to entitle it to bring this action.
It is unquestioned that an unsuccessful bidder does not have standing to attack the contract award. Waszen v. Atlantic City, 1 N.J. 272 (1949). This, however, is not K.S.B.'s position. Rather, K.S.B. contends that it was deprived of the opportunity to offer its pumps to prospective bidders. As such it has adequate standing to challenge the alleged illegal exclusionary addendum. Interstate Waste Removal Co. v. Bordentown Comm'rs, 140 N.J. Super. 65, 69 (App. Div. 1976); Lieberman v. Neptune Tp., 50 N.J. Super. 192, 197, 198 (App. Div. 1958); Juice Bar Corp. v. Neptune Tp. Comm., 36 N.J. Super. 164 (App. Div. 1955).
The Commission also contends that Fazio lacks standing to maintain this action because she seeks to advance the pecuniary interest of K.S.B. and not the interest of the taxpaying public. However, Fazio is admittedly a property owner, taxpayer and resident of the City of Clifton, a municipality serviced by the Commission, and has a pecuniary interest in the cost of this project, as do all affected tax-payers. *543 As a resident and taxpayer, plaintiff Fazio has standing to raise the question of the illegality of the contract and addendum. Camden Plaza Parking v. City of Camden, 16 N.J. 150 (1954); Waszen v. City of Atlantic City, 1 N.J. 272 (1949).

III. Applicability of N.J.S.A. 40A:11-18, 52:32-1 et seq., and 52:33-1 et seq.

In construing the bidding statutes, one must look to the public good, for they have been enacted for the benefit of the taxpayer. Their objectives are to guard against favoritism, improvidence, extravagance and corruption, and to secure for the public open and free competition. Terminal Constr. Corp. v. Atlantic County Sewerage Auth., 67 N.J. 403 (1975).
The Commission was created by N.J.S.A. 58:5-1 et seq. The title divided the State into two water supply districts, the North Jersey District and the South Jersey District. The statute also (1) provides that the body having charge of the water supply in any municipality may, by resolution, determine that it is in the interests of the municipality that a district water supply commission be appointed for the water supply district wherein the municipality is located, for the purpose of developing, acquiring and operating a water supply (N.J.S.A. 58:5-2); (2) provides for the appointment of commissioners by the Governor with the advice and consent of the Senate; (3) constitutes the commission as a body corporate; (4) provides that the cost of operation of the commission shall be estimated yearly in advance and apportioned among the municipalities respectively in proportion to the amounts of water contracted to be used by each, and that each municipality shall pay these sums to the commission in advance when requested (N.J.S.A. 58:5-23) and (5) provides that whenever performing work or requiring materials in excess of $2500, the commission must do so by public bid (N.J.S.A. 58:5-20).
*544 Plaintiff contends that there is no authority for the Commission to have relied upon N.J.S.A. 40A:11-18 because it is a nonlocal body and the aforementioned statute relates to county and municipal governments. While the Commission was created by statute and provides for commissioners to be appointed by the Governor with the advice and consent of the Senate, it also has municipalities as its participants, and provides an essential life-sustaining function to the citizenry of the participating municipalities. This public body, having both state and local characteristics, is in the court's opinion an amalgam.
The Commission in its addendum made reference to "Buy American," as set forth in N.J.S.A. 40A:11-18 which provides as follows:
Each local unit shall provide, in the specifications for all contracts for county or municipal work or for work for which it will pay any part of the costs, that only manufactured and farm products of the United States, wherever available, be used in such work.
While stating that this statute does not apply to the Commission, plaintiff recognized the existence of N.J.S.A. 52:32-1 et seq, and 52:33-1, et seq. N.J.S.A. 52:32-1 contains the "Buy American" requirement for all state projects. It states:
The State shall make provision in the specifications for all contracts for State work and for work for which the State pays any part of the cost, that only such manufactured and farm products of the United States, whenever available, be used in such work.
I am satisfied that this statute is inapplicable because the filtration plant is not a state project.
N.J.S.A. 52:33-2 provides:
Notwithstanding any inconsistent provision of any law, and unless the head of the department, or other public officer charged with the duty of law, shall determine it to be inconsistent with the public interest, or the cost to be unreasonable, only domestic materials shall be acquired or used for any public work.
*545 This section shall not apply with respect to domestic materials to be used for any public work, if domestic materials of the class or kind to be used are not mined, produced or manufactured, as the case may be, in the United States in commercial quantities and of a satisfactory quality.
A public work is defined in N.J.S.A. 52:33-1 as "any public building, public highway, bridge, or other public betterment, work or improvement of a permanent nature, constructed, re-constructed, repaired or improved wholly at the expense of the public."
Being cognizant of the public policy that bidding statutes are for the benefit of the taxpayers, and having found that the Commission is a public body having both state and local characteristics, and that this project is a public work within the meaning of N.J.S.A. 52:33-1, this contract is within the "Buy American" provision set forth in N.J.S.A. 52:33-2. The "Buy American" notice in the Commission's addendum was compelled by N.J.S.A. 52:33-2 and is proper, notwithstanding the citation N.J.S.A. 40A:11-18. Finding that the Commission is so bound is both within the letter and spirit of the legislative intent as manifested in the three "Buy American" statutes.

IV. Constitutionality

A. Commerce Clause
The Commerce Clause of the Constitution of the United States, Art. I, § 8, empowers Congress to regulate commerce with foreign nations. That power is an inherent, exclusive and plenary power of the Congress.
Plaintiff cites Hale v. Bimco Trading, Inc., 306 U.S. 375, 59 S.Ct. 526, 83 L.Ed. 771 (1939), and Tupman Thurlow Co., Inc. v. A.W. Todd, 230 F. Supp. 230 (M.D. Ala. 1964), to substantiate its position that the "Buy American" statutes conflict with the Commerce Clause and unduly burden foreign commerce. Both cases are distinguishable.
*546 In Bimco, a Florida statute sought to impose a 15¢ per hundredweight inspection fee on all imported cement. Cement produced within the state was not subject to this inspection or inspection fee. According to the uncontested allegations, the inspection fee was 60 times the actual cost of the inspection. The United States Supreme Court held that the Florida statute was invalid because it imposed an undue and discriminatory burden on foreign commerce. In Todd the Alabama Commissioner of Agriculture seized and impounded imported meat and meat products to prevent their introduction into state markets in competition with state products. While Todd maintained that his purpose in impounding the imported beef was to protect the safety and welfare of the people of the State of Alabama from unwholesome and adulterated beef, the court found that no credible evidence was presented demonstrating any real or immediate threat to the health and safety of the people of the state. The court found that the Commissioner's action was designed to discriminate against imported meats in favor of the domestic meat and his action demonstrated nothing more than a pretext to enable him to exclude imported meats from Alabama for economic reasons. Both Bimco and Todd involve calculated discrimination against foreign commerce.
By contrast, the three New Jersey "Buy American" statutes do not set forth a state policy of calculated discrimination against foreign commerce. These statutes merely direct state governmental agencies of all types to use American-made products in public projects, where available. This governmental directive to a public body to buy American upon entering the market as a purchaser does not interfere with Congress' plenary power to regulate foreign commerce. The statute does not seek to limit anyone from importing as much of their products as they wish into New Jersey and imposes no undue burden upon those products upon their entry.
Plaintiff alleges that the effect of the statute is to eliminate anyone who intends to import products from abroad from participating in any public works in New Jersey, and *547 thereby tends to place a restriction on foreign trade. In this age of massive commercial intercourse between states and nations, there is scarcely any contract which cannot, to a limited or remote degree, be said to affect interstate or foreign commerce. However, it is only direct interference with the freedom of such commerce that brings state regulation into conflict with the exclusive domain of federal legislation. American Yearbook Co. v. Askew, 339 F. Supp. 719 (M.D. Fla. 1972) (three-judge court), aff'd mem., 409 U.S. 904, 93 S.Ct. 230, 34 L.Ed.2d 168 (1972). Limited or remote impact upon commercial intercourse is not what is sought to be protected by the Commerce Clause.
Hughes v. Alexandria Scrap Corp., 426 U.S. 794, 96 S.Ct. 2488, 49 L.Ed.2d 220 (1976), discussed the validity of a 1974 amendment to a Maryland statute involving the payment by the state of cash bounties to Maryland-licensed scrap processors for the destruction of abandoned Maryland vehicles. The amendment effectively limited the State bounties to licensed processors situate in Maryland, to the exclusion of out-of-state licensees. A Virginia-based, Maryland-licensed, processor which had previously profited from the bounty program challenged the amendment. In language applicable to the present case the court concluded (at 810, 96 S.Ct. at 2497) that "Nothing in the purposes animating the Commerce Clause forbids a state, in the absence of Congressional action, from participating in the market and exercising the right in favor of its own citizens over others." Absent directly conflicting congressional or executive action, the New Jersey "Buy American" statutes do not conflict with the Commerce Clause.

B. Supremacy Clause
Plaintiff contends that the New Jersey "Buy American" statute is invalid because it conflicts with the Supremacy Clause, Art. VI, cl. 2 of the Constitution of the United States, in that it contravenes the General Agreements on *548 Tariffs and Trade (GATT). This court recognizes that the external powers of the United States are to be exercised without regard to state laws or policies, and recognizes the supremacy of treaties and executive agreements. United States v. Belmont, 301 U.S. 324, 57 S.Ct. 758, 81 L.Ed. 1134 (1937).
Under Part II, Art. III, par. 2 of GATT, the contracting parties may not accord less favorable treatment to the products of any other contracting party with respect to laws, regulations and requirements affecting their internal use, sale, purchase, transportation or distribution. Part II, Art. III, par. 5 of GATT exempts from the operation of par. 2 the procurement of goods by governmental agencies for governmental use as follows: "The provisions of this Article shall not apply to the procurement by governmental agencies of products purchased for governmental purposes and not for resale or use in the production of goods for sale * * *."
Without this exception the "Buy American" statute would clearly conflict with GATT and, therefore, the Supremacy Clause. The only basis by which the exception would be inapplicable to the Commission would be under that language which states, "or use in the production of goods for sale."
Since the pumps constitute a part of the filtration plant and are to be used in the production and supply of drinking water, they will be used in the production of goods for sale within the language of the GATT exception. Consequently, in this context, the "Buy American" statute, as incorporated in the addendum, conflicts with GATT and the Supremacy Clause and is unconstitutional.

V. Remedies
As the court has already found that the Buy American statute is applicable to the Commission, and in the factual context of this proceeding conflicts with the Supremacy *549 Clause of the United States Constitution, it must now address itself to the issue of the relief to be granted. In granting relief a court of equity must attempt to balance the equities.
In balancing the equities in this case this court has considered the effort of the Commission to comply with a statute of the State of New Jersey which it felt was applicable to it and required it to alert bidders to buy American. Also, the public need for safe drinking water, the long delays already encountered as a result of litigation, both past and present, and the immense and escalating cost of this project were considered. These interests were balanced against the uncertainty of K.S.B.'s soliciting a prospective bidder who would consider the use of plaintiff's pumps, the uncertainty of K.S.B.'s having those pumps accepted by a general contractor, the uncertainty of the pumps meeting the contract's specifications and the uncertainty of that contractor being the low bidder and ultimately receiving the contract award. The interests of the taxpayer plaintiff were also considered by the court. Considered was the fact that there was no evidence presented to indicate that were the project to be readvertised without the "Buy American" clause it would be any less costly and effect a saving to the taxpayer. Also considered was the uncontradicted representation that each month's delay in construction would increase the project's cost by approximately $200,000.
Since plaintiffs offer nothing beyond speculation in support of their request for injunctive relief, and defendant demonstrates tangible and substantial harm to the public in the event an injunction were issued, this court cannot, in good conscience and in the exercise of its equitable jurisdiction, order a restraint which will further impede construction. After attempting to balance these interests it is this court's determination that equity will best be served by an order directing that the first set of bids impounded by the conservator be received and opened on notice to these *550 bidders of the time and place of opening. As the mailgram procedure requesting bids is of doubtful validity and not authorized by any authority known to this court, those bids will remain impounded by the conservator and not returned to the bidders submitting them until the appeal process, if invoked, is exhausted. This opinion does not preclude K.S.B. from pursuing any money damage remedy available to it.
Judgment will be entered in accordance with this opinion.