678 A.2d 332

COMMUNICATIONS WORKERS OF AMERICA, AFL–CIO, CAROLYN WADE, PRESIDENT CWA LOCAL 1040, SANDRA ELIAS, JUDITH FRANKEL, JOHN STEWARD, AND ANDREW SAVICKY, PLAINTIFFS, v. BRIAN W. CLYMER, STATE TREASURER OF THE STATE OF NEW JERSEY, AND WILLIAM H. FAUVER, COMMISSIONER, STATE OF NEW JERSEY DEPARTMENT OF CORRECTIONS, DEFENDANTS, AND CORRECTIONAL MEDICAL SERVICES, INC., AND ST. FRANCIS MEDICAL CENTER, DEFENDANTS–INTERVENORS.

Superior Court of New Jersey
Law Division Mercer County

Decided February 7, 1996.

*Steven P. Weissman,* for plaintiffs, (*Weissman & Mintz,* attorneys).

*R. Brian McLaughlin,* Deputy Attorney General, for defendants *Brian W. Clymer,* State Treasurer of the State of New Jersey and *William H. Fauver,* Commissioner, State of New Jersey Department of Corrections (*Deborah T. Poritz,* Attorney General of New Jersey).

*Steven D. Weinstein,* for defendant-intervenor Correctional Medical Services, Inc., (*Blank, Rome, Comisky & McCauley,* attorneys).

*Susan Gieser,* for defendant-intervenor St. Francis Medical Center (*Picco, Herbert, Kennedy,* attorneys).

*Howard M. Nashel,* for amicus curiae New Jersey Psychological Association (*Nashel, Kates, Modarelli, Nussman, Rapone & Ellis,* attorneys).

CARCHMAN, A.J.S.C.

■ The Department of Corrections (DOC), through the Division of Purchasing and Property (Division) issued a Request for Proposal (RFP) inviting bids from private contractors to provide health care services, including psychological services, to inmates in state correctional institutions and facilities. Initially the RFP, as part of the bid specifications, required that all psychologists be licensed. Some months later, the Division amended the RFP, eliminated the licensure requirement and stated, "[t]he psychological services to be provided under the proposed contractural arrangement will be the same as those currently being provided by the MA degree individuals now providing the same services within the State correctional facilities."

Plaintiffs, the Communication Workers of America, AFL–CIO and individual psychologists now employed by the DOC brought this action challenging the RFP and asserting that it violates the State Public Contracts Law (SPCL), *N.J.S.A.* 52:34–12, and the

New Jersey Practicing Psychology Licensing Act (PPA), *N.J.S.A.* 45:14B–1 to –46, because it permits the use of non-licensed psychologists to perform psychological services.

The issue presented is whether the statutory exemption permitting unlicensed individuals to provide psychological services as part of their duties as employees of the State, *N.J.S.A.* 45:14B–6(a)(1), extends to employees of private contractors who perform services pursuant to a contract awarded by the State. For the reasons set forth below, this court concludes that the statutory exemption does not extend to independent contractors and their employees. Thus, the RFP violates the PPA.

## A.

The DOC is responsible for the custody and care of persons committed to State correctional institutions. The State maintains twelve adult correctional, two juvenile and seven satellite institutions and is required to provide medical and mental health services for approximately 26,000 inmates annually.

The scope of the mental health services provided in the State's institutions is extensive. All inmates receive a psychological screening upon intake into the system. Subsequently, inmates must be psychologically screened for work-detail suitability. Pre-parole evaluations must be performed by psychologists and assessments must be made to determine reduced custody settings. In addition, DOC provides both regular and occasional individual counseling sessions as well as case management for mentally ill inmates. Treatment is also provided for inmates who are emotionally unstable or having problems adjusting to incarceration.

Currently, psychological services are provided primarily by unlicensed psychologists by virtue of a governmental exemption from the licensing requirements found at *N.J.S.A.* 45:14B–6(a)(1). Absent an applicable exemption or waiver, one is prohibited from holding oneself out as a psychologist and practicing psychology without meeting the licensing requirements of the New Jersey

Board of Psychological Examiners. The requirements include a PhD degree.

In July 1995, the DOC, through the Division, issued an RFP seeking to award a contract to a private vendor for the provision of all inmate medical services, including mental health services. The RFP states that any successful bidder will not be an employee of the State, but will have the status of a contractor. *RFP* § IV at p. 2.

The RFP required the use of New Jersey licensed psychologists to provide a wide range of mental health services. In this respect, the RFP was initially fully consistent with the State's licensing requirements. The psychological services to be provided by a contractor include:

a. psychological screening for classification of all new arrivals in coordination with the comprehensive health appraisal done on intake at the reception center;

b. special psychological evaluations at the request of the New Jersey State Parole Board;

c. evaluations of work detail suitability;

d. case management for mentally ill inmates consisting of activities designed to facilitate necessary care and to monitor its impact;

e. regular and/or individual counseling sessions;

f. evaluations of inmates that are self-referred and/or having difficulty coping with conditions of confinement;

g. treatment of emotionally unstable but uncommittable inmates;

h. ongoing training of other institutional staff on relevant mental health topics;

i. supervision of treatment staff;

j. thorough documentation of service delivery in the health record;

k. maintenance of logs, reports and service delivery;

l. participation in administrative meetings and Quality Improvement Programs;

m. meetings with the Department of Correction's Director of Psychological Services;

n. pre-parole evaluations for State inmates and those held in county facilities;

o. assessments for various reduced custody settings, or any other assessments required by the administration or classification committee;

p. emergency/crisis intervention services to inmates with appropriate follow-up to medical/psychiatric services;

q. psychological evaluation prior to inmate release.

On September 29, 1995, the Division amended the RFP to eliminate the requirement to utilize licensed psychologists. The RFP now provides:

> The psychological services to be provided under the proposed contractual arrangement will be the same as those currently being provided by the MA degree individuals now providing the same services within the State correctional facilities.

This amendment, while drafted to appear consistent with the exemption afforded state employees under *N.J.S.A.* 45:14B–6(a)(1), would permit private contractors to utilize unlicensed psychologists to perform the services previously noted.

The Division received a number of bids in response to the RFP, and on November 27, 1995, issued a Notice of Intent to award the contract to intervening defendant Correctional Medical Services, Inc. (CMS). Many of the psychological services will be performed at a subcontractor's location—intervening defendant Saint Francis Medical Center (SFMC).

In response to the Notice of Intent, plaintiff, CWA, commenced this action seeking a judgment declaring the RFP to be in violation of the SPCL, *N.J.S.A.* 45:14B–1. CWA originally brought this action solely in its own name asserting that it was an unsuccessful bidder. CWA, thereafter, noted that it did not submit a bid, but amended its complaint to join as additional plaintiffs individuals who are simultaneously taxpayers and DOC employees providing the psychological services at issue and who will be displaced by the contract. Plaintiffs seek preliminary and final injunctive relief to enjoin the awarding and implementation of the contract. The New Jersey Psychological Association (NJPA) has moved to intervene as *amicus curiae*.

While plaintiffs' application seeks only preliminary relief, defendants have moved to dismiss the complaint for failure to state a cause of action. *R.* 1:6–2(e). A review of the record suggests that there are no disputed issues of material fact, and this court can enter final judgment.

## B.

■ Defendant, Division, challenged CWA's standing to pursue this action. Despite CWA's amendment of the complaint to include as plaintiffs four taxpayers who are state psychologists who would be displaced if the contract were implemented and one taxpayer who is also the president of the plaintiff CWA, defendant SFMC continues to challenge the standing of all plaintiffs. SFMC asserts that the individual plaintiffs are simply "nominees" of plaintiff and should not be permitted to challenge the bidding process.

■ Unsuccessful bidders have no standing to challenge specifications contained in an RFP *after* bids are opened. *Autotote Ltd. v. New Jersey Sports & Exposition Auth.*, 85 *N.J.* 363, 369, 427 *A.*2d 55 (1981); *Waszen v. Atlantic City,* 1 *N.J.* 272, 276, 63 *A.*2d 255 (1949). As the Supreme Court stated in *Waszen, supra,* 1 *N.J.* at 276, 63 *A.*2d 255, "[t]he rationale of such a holding is that one cannot endeavor to take advantage of a contract to be awarded under illegal specifications and then, when unsuccessful, seek to have the contract set aside."

While standing is restricted as to unsuccessful bidders, it is more broadly interpreted as to taxpayers. *Yacenda Food Management Corp. v. N.J. Highway Auth.,* 203 *N.J.Super.* 264, 496 *A.*2d 733 (App.Div.1985). In *Yacenda,* defendant raised the same argument raised by defendant SFMC here—that the taxpayer was a "strawman" for Yacenda, which had sought to avoid the bidding process to secure a contract with the Garden State Parkway for services. The Appellate Division rejected the argument and Judge Long, speaking for the court, noted:

We have carefully reviewed this record and find that the arguments raised by NJHA and Marriott as to the standing of Hellman ... are lacking in merit. Clearly, as a taxpayer, Hellman had standing to sue.... taxpayers have traditionally had standing to challenge the unlawful award of a publicly bid contract. See *Camden Plaza Parking v. City of Camden,* 16 *N.J.* 150, 159 [107 *A.*2d 1] (1954); *Warnock Ryan Leasing v. State, Dept. of Treasury,* 194 *N.J.Super.* 11, 16 [475 *A.*2d 1270] (App.Div.1984). In order to exercise that right in a meaningful way, taxpayers must also have the right to challenge whether public bidding is required

in a particular instance. Like Judge Cohen, we find "extraordinary" the argument that "in effect . . . no member of the public has the power to get a court's attention on this [contract]." We agree and are well satisfied that Hellman, as a taxpayer, had standing to raise the important question of the need for public bidding of NJHA restaurant contracts. *We also agree fully with Judge Cohen's conclusion that Hellman's private interest in the outcome of this litigation does not diminish his standing as a taxpayer. Warnock Ryan Leasing v. State, Dept. of Treasury,* 194 *N.J.Super.* 11 [475 *A.*2d 1270] (App.Div.1984); *KSB Technical Sales v. No. Jersey Dist. Water Supply,* 150 *N.J.Super.* 533 [376 *A.*2d 203] (Ch.Div.1977), mod. and aff'd 151 *N.J.Super.* 218 [376 *A.*2d 960] (App.Div.1977), rev'd on other grounds 75 *N.J.* 272 [381 *A.*2d 774] (1977), app. dism. 435 *U.S.* 982, 98 *S.Ct.* 1635, 56 *L.Ed.2d* 76 (1978). McQuillan, *Municipal Corporations* (3 ed. 1984), § 52.11 at 25–26.
[*Id.* at 270–71, 496 *A.*2d 733 (emphasis added).]

Notwithstanding plaintiffs' membership in defendant CWA, they unquestionably have an interest in the outcome of this litigation, both as taxpayers and persons directly affected by the bidding process. They have standing to bring this action.

## C.

At present, DOC currently exercises its prerogative under the statutory exemption and employs a number of unlicensed individuals to provide psychological services to inmates.

Plaintiffs argue that there is no exemption that would allow unlicensed employees of a private contractor to provide the services required by the RFP.

Defendants argue that plaintiffs' position is merely "technical" and that the State should be permitted to employ private contractors and receive the benefit of the exemptions. They argue that the purpose of the statute is to protect the public. Defendants' position is best stated in defendant State's brief where it asserted:

The Statement accompanying S–325 (1966), which was enacted and codified as the current Act, states in pertinent part that "[t]his bill provides protection for the public by requiring that individuals who offer to render services *to the public for a fee* must be licensed on the basis of professional qualifications and ethical conduct" (emphasis added). The focus of the statute is upon the nature of the activities performed and for whom they are performed. Thus, in keeping with the consumer/public protection purpose of the legislation, the statute provides that only a licensed psychologist may provide professional psychological services in this State. However, also in keeping with the purpose of the law, those individuals who are not

offering to render, or rendering, psychological services to the general public for a fee because they are practicing within a State facility are exempt from the licensure requirement. The evil sought to be addressed by the licensing requirements of the Act was clearly to protect the general public from being bilked by unscrupulous and unqualified individuals who hold themselves out to be psychologists. The unlicensed individuals who currently provide psychological services to inmates do not charge their clients a fee; moreover, the quality of the psychological services provided is subject to the oversight of the Director of Psychological Services within the Department's Office of Institutional Support Services. *N.J.A.C.* 10A:16–4.1 *et. seq.* The continuation of this practice under the auspices of private contractors (who may in fact employ many of the same individuals who currently perform these functions) would do no violence to the legislative intent of the Act. There is no principled distinction between the psychological services rendered by an unlicensed individual directly employed by the State and those rendered by the same person retained by an independent contractor engaged by the State.

Neither would it violate the public policy of the State, as plaintiff has asserted. Rather, public policy would be furthered by its privatization initiative in providing high quality psychological care in a more cost-effective manner.

[Defendant State's brief at 5–6.]

The practice of psychology without a license is prohibited in the State of New Jersey unless an applicable exemption exists. The practice of psychology is defined as the "rendering of professional psychological services to individuals, singly or in groups, whether in the general public or in organizations, either public or private, for a fee, monetary or otherwise." *N.J.S.A.* 45:14B–2(b). Without a license an individual may not represent himself or herself to be a practicing or certified psychologist or offer to practice psychology. Persons who are not licensed may not practice psychology, as defined in the Act for any manner of fee. *N.J.S.A.* 45:14B–5. Violations of the licensing requirements expose the offender to liability for damages sustained by the patient in an amount not less than $5,000, plus the cost of the action and reasonable attorney's fees. *N.J.S.A.* 45:14B–42.

An individual may practice psychology without a license only if he or she qualifies under one of the exemptions found at *N.J.S.A.* 45:14B–6. Those exemptions allow an individual to practice psychology if he or she (i) is working "*as an employee of*" an accredited academic institution or a federal, State, county or local governmental institution or agency, *N.J.S.A.* 45:14B–6(a)(1) (em-

phasis added); (ii) is working for a nonprofit community agency under the direct supervision of a licensed practicing psychologist, *N.J.S.A.* 45:14B–6(a)(3); (iii) is certified by the New Jersey State Department of Education as a school psychologist and offers psychological services within the scope of his employment but not to the general public, *N.J.S.A.* 45:14B–6(b); (iv) is a student of psychology if under supervision and clearly designated as an intern or trainee, *N.J.S.A.* 45:14B–6(c); (v) is a comparably licensed psychologist of another state who, with notice to the New Jersey Board of Psychological Examiners, will practice in New Jersey for only a brief time, *N.J.S.A.* 45:14B–6(d); or, if the Board issues a temporary permit under *N.J.S.A.* 45:14B–6(f). On their face, none of these exemptions are applicable to individuals who would be supplying psychological services under the RFP.

The purpose of the RFP is to privatize inmate health care services provided heretofore by the Department of Corrections and to "secure a qualified Contractor who can manage and operate a comprehensive health care services program...." *RFP* § 1.0110. The RFP defines the relationship between the successful bidder and the State as an independent principal; the contractor will not be an employee of the State. *RFP* § IV at p. 2. Neither the successful bidder nor the persons hired by the bidder will be state employees within the meaning of *N.J.S.A.* 45:14B–6.

As previously noted, defendants focus on the fact that no fee is generated by the governmental psychologist nor is there direct expense to any member of the public. Defendants' view is too narrow.

The Legislature chose to create limited exemptions to a licensing scheme which should not now be expanded beyond the limits of the statutory language. Professional licensing standards are the mechanism by which the licensing agency ensures and controls the quality of professional services. Through its regulatory scheme, the Legislature has achieved a balance between the needs of certain governmental, non-profit and educational institutions and the goal of ensuring reliable professional services to the

public. Defendants' proposal to relocate private contractors within the scheme is disruptive of the regulatory balance and is beyond the language and intent of the statutory exemptions.

The exemptions are premised on the ability of the exempt agencies to control and regulate non-licensed psychologists within their respective institutions. Defendants assert that under the RFP this control is still maintained. *See e.g.*, *RFP* § 3.33.1 (the formation of Quality Improvement Committees to monitor health services); § 3.33.2 (Chart review by physicians); § 3.33.4 (DOC review of inmate complaints and contractor's implementation of DOC decision); § 3.34 (candidacy requirements); § 3.34.8 (review of personnel files by DOC); § 3.36 (standards of care); § 7.4.3.11 (staffing plan). A review of the RFP reveals that while a great deal of authority is exercised by DOC over the contractor's employees, ultimately, the control over the employees remains with the contractor. By definition, by the very nature of the RFP and the contracting out of these services, there is a diminution in control.

More importantly, although it is implicit in the statutory language that a certain quantum of control must be maintained over the unlicensed individuals, it is explicit that the control must be exercised in a certain *manner*. The statute dictates that the exempted individual and the State agency must have an employee-employer relationship. *N.J.S.A.* 45:14B-6(a)(1).

The *amicus curiae*, NJPA, has brought to the court's attention a recent regulatory matter which, while not dispositive, is persuasive. The State Board of Psychological Examiners recently refused to adopt a new rule, proposed *N.J.A.C.* 13:42-1.3, which would have extended the license exemption to mental health groups who contract with the State. The Board noted:

an increasingly casual incidence of contracts between certain State agencies and unlicensed, masters' degree level "psychologists" who are hired as independent contractors, in violation of the wording and intent of *N.J.S.A.* 45:14B-6 which exempts "employees" of government agencies and schools. The Board interprets the term "employees" of government agencies as meaning regular employees and

not merely "independent contractors," and is concerned about whether the conduct of an independent contractor can realistically be monitored to assure client safety.

[26 *N.J.R.* 4738 (Dec. 5, 1994).]

■ While an administrative agency's interpretation of its rules is not dispositive, it is entitled to great weight. *Cedar Cove, Inc. v. Stanzione,* 122 *N.J.* 202, 212, 584 *A.*2d 784 (1991) (citations omitted) ("the meaning ascribed to legislation by the administrative agency responsible for its implementation, including the agency's contemporaneous construction, long usage, and practical interpretation, is persuasive evidence of the Legislature' understanding of its enactment"); *Department of Civil Service v. Clark,* 15 *N.J.* 334, 341, 104 *A.*2d 685 (1954) (citations omitted) ("the principle is well established by a wealth of authority that resort may be had to long usage, contemporaneous construction and practical interpretation in construing statutes, to ascertain the meaning of technical terms, to confirm a construction deduced from the language, to explain a doubtful phrase or where the meaning is obscurely expressed.").

The Legislature has carefully and selectively exempted certain providers of psychological services from the licensing requirements of the PPA. It is for the Legislature, not this court, to extend the exemptions beyond their present limits.

Judgment is entered for plaintiffs.